

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

5-11-1999

# Corestates Bank v. Huls America Inc

Precedential or Non-Precedential:

Docket 97-1784

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Corestates Bank v. Huls America Inc" (1999). *1999 Decisions.* Paper 118.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/118

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed May 11, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 97-1784

CORESTATES BANK, N.A.,
Appellant

v.

HULS AMERICA, INC.

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civ. No. 96-cv-08119)
District Judge: Honorable Harvey Bartle, III

Argued: July 17, 1998

Before: BECKER, Chief Judge, STAPLETON and WEIS,
Circuit Judges.

(Filed May 11, 1999)

       WALTER WEIR, JR., ESQUIRE
        (ARGUED)
       Weir & Partners
       100 So. Broad Street
       Suite 1200 – Land Title Building
       Philadelphia, PA 19110

       Counsel for Appellant

DAVID J. D'ALOIA, ESQUIRE
VINCENT F. PAPALIA, ESQUIRE
 (ARGUED)
ADAM S. RAVIN, ESQUIRE
Saiber, Schlesinger, Satz &
 Goldstein, LLC
One Gateway Center, 13th Floor
Newark, NJ 07102-5311

EDWARD J. DiDONATO, ESQUIRE
DiDonato & Winterhalter
1818 Market Street, 29th Floor
Philadelphia, PA 19103

Counsel for Appellee

OPINION OF THE COURT

BECKER, Chief Judge.

This appeal by CoreStates Bank, N.A. ("CoreStates") requires us to consider the putative claim preclusive effect of the Bankruptcy Judge's denial of CoreStates's objections to a Chapter 11 bankruptcy reorganization plan confirmation. Both CoreStates and appellee Huls America, Inc. ("Huls") had extended substantial credit to the debtor, United Chemical Technologies, Inc. ("UCT"), a chemical separation science company, to facilitate the purchase by UCT of a manufacturing facility from Huls. They then entered into a Subordination Agreement in order to clarify their respective rights to receive payment from UCT. Under the Agreement, UCT's debts to Huls were subordinated to CoreStates's. Huls also agreed that it would not retain any payment by UCT, including those paid under a bankruptcy plan, until UCT had paid off its indebtedness to CoreStates in full.

After UCT filed for bankruptcy, but before the Plan of Reorganization was finally confirmed, UCT paid to Huls some $600,000 as called for by the Plan. CoreStates demanded that Huls pay this sum over to it. CoreStates filed objections to the Plan on the grounds, inter alia, that the Plan entitled Huls to receive $600,000 immediately,

2

asserting that this proposed payment unfairly discriminated between creditors. CoreStates did not contend to the Bankruptcy Judge that the $600,000 had to be paid over to it pursuant to the Subordination Agreement.

Subsequently, CoreStates filed the present suit in the District Court, alleging that Huls is obligated by the Subordination Agreement to turn the $600,000 over to CoreStates. The issue on appeal is whether CoreStates has a right to receive the funds, when both CoreStates's and Huls's rights in the bankruptcy estate, and CoreStates's objection based on the payment in particular, were settled in the confirmation proceeding. The District Court concluded that CoreStates's claim was precluded because CoreStates could have raised its claim based on the Agreement in the bankruptcy proceeding alongside its objection, but failed to do so. See CoreStates Bank, N.A. v. Huls America, Inc., No. Civ. A. 96-8119, 1997 WL 560193 (E.D. Pa. Aug. 28, 1997).

This case is difficult because it falls within the interstices of the law of judgments. As discussed below, a Bankruptcy Judge's order rejecting a creditor's objection to a bankruptcy reorganization plan acts as a final judgment for preclusion purposes. In this case, CoreStates objected to the Plan because it would result in the immediate payment of $600,000 to Huls, and its objection seems to subsume the Subordination Agreement, even though it was not advanced in terms. As a result, both issue preclusion and claim preclusion might have some relevance to the present litigation, which concerns whether Huls is obligated by the Subordination Agreement to turn the $600,000 over to CoreStates. We think that claim preclusion provides the more appropriate framework, however, because we are unsure that the Subordination Agreement was raised with sufficient clarity in the reorganization proceeding to give rise to issue preclusion.

Claim preclusion bars a party from litigating a claim that it could have raised or did raise in a prior proceeding in which it raised another claim based on the same cause of action. Agreeing with three other circuits (two are of the contrary view), we conclude that the doctrine applies regardless of the type of bankruptcy jurisdiction-- core or

3

non-core -- within which the current claim would fall. Moreover, we believe that the facts of this case-- particularly where the parties were formerly creditors in a bankruptcy proceeding -- fall within the rubric of claim preclusion, albeit at the margin.

Although our holding is largely fact-bound, insofar as we bring it within the claim preclusion jurisprudence we are obliged to flesh out its doctrinal aspect. We note in this regard the limiting effects on these precepts of the internal elements of the claim preclusion test itself, set forth in Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (3d Cir. 1992), and of the statutory constraints on the scope of bankruptcy jurisdiction. First, claim preclusion applies only if the current claim would have been within the jurisdiction of the court hearing the prior bankruptcy proceeding. A claim, in order to fall within the bankruptcy jurisdiction, must at least be one that "could conceivably have any effect on the estate being administered in bankruptcy." Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984). Second, except possibly in certain unusual circumstances, claim preclusion applies only if the party to be precluded raised a claim, such as an objection to a reorganization plan, in a prior proceeding. Finally, claim preclusion applies only if the events underlying the current claim are essentially similar to those underlying the claim made in the bankruptcy proceeding. If the current claim alleged to be precluded does not meet these three requirements it will not be precluded.

CoreStates's claim clearly meets these three requirements. First, it could have raised its claim under the Subordination Agreement during the confirmation proceeding along side its objections, both as a legal and as a factual matter. The claim based on the Subordination Agreement fell within the non-core "related to" bankruptcy jurisdiction, if not the core jurisdiction. In addition, since UCT paid Huls the money before the Plan was confirmed, CoreStates's claim accrued before the confirmation proceeding concluded. Second, CoreStates filed an objection to the confirmation of UCT's Plan of Reorganization that was argued at length before the Bankruptcy Judge and the

4

District Court by both CoreStates and Huls. This objection put into controversy the entire amount that Huls was to receive in full satisfaction of its claims against UCT. Third, CoreStates's objection to the confirmation of the Plan involved the same underlying factual issues as CoreStates's present claim. We therefore conclude that the District Court correctly found that CoreStates's claim was precluded; hence we will affirm.

I. Facts & Procedural History

This case arises out of a series of events culminating in the bankruptcy reorganization of UCT. See CoreStates Bank, N.A. v. United Chem. Techs., Inc., 202 B.R. 33 (E.D. Pa. 1996). In 1993, UCT purchased from Huls a facility that manufactured specialty chemicals.[1] This purchase was funded in part by loans and extensions of credit from CoreStates, totaling about $1.1 million.[2] Huls also provided financing for the purchase and, after the sale, continued to supply products to UCT on credit terms. As a condition of the financing, CoreStates, UCT and Huls executed a Subordination Agreement ("the Agreement"). The Agreement provided, in part, that Huls would subordinate its claims to CoreStates's and would not retain any payment by UCT until UCT's indebtedness to CoreStates had been paid off in full. It further provided that, if any bankruptcy proceeding was filed by or against UCT, Huls would hold any payments it received pursuant to that proceeding as trustee for the benefit of CoreStates and deliver such payments immediately to CoreStates.

As a consequence of an explosion at UCT's new facility, UCT filed for Chapter 11 protection in October 1995. UCT filed its first Plan of Reorganization in February 1996. This plan met with resistance from a number of interested parties, including Huls and CoreStates. Following further negotiations, UCT submitted a First Amended Plan of Reorganization in March 1996. The Amended Plan had the

_____

1. During the pendency of this litigation, Huls America changed its name to Creanova, Inc. We continue to refer to the defendant herein as Huls.

2. During the pendency of this litigation, CoreStates merged into First Union Corp. We continue to refer to the plaintiff herein as CoreStates.

consent of all interested parties except CoreStates, which objected to it.

Under the Amended Plan, CoreStates was to receive a cash payment of $550,497 on the Plan's effective date, and repayment of remaining lines of credit and mortgages with interest over periods ranging from five to fifteen years. CoreStates would also retain all its liens and security interests, except for certain machinery and equipment liens. Huls, a creditor with a priority junior to CoreStates, was to receive a $600,000 cash payment in full satisfaction of its more than $3.2 million in claims, approximately $2.3 million of which was secured. Nothing in the Amended Plan purported to modify or nullify the Agreement as between CoreStates and Huls.

CoreStates filed an action in the form of objections to the Amended Plan. These objections did not refer to the Agreement. CoreStates did, however, specifically object on the grounds that under the Plan Huls was entitled to receive $600,000 immediately. CoreStates argued that this proposed payment to Huls unfairly discriminated between creditors.

On June 5, 1996, the Bankruptcy Judge rejected CoreStates's objections. One week later, he held a confirmation hearing. Just prior to the hearing, counsel for CoreStates informed counsel for Huls that CoreStates intended to enforce Huls's obligation to turn over the proceeds that it would receive under the Plan. At the confirmation hearing, Huls raised the issue with the court, and a brief colloquy ensued, although no papers were filed. The court did not formally resolve the issue, however, and proceeded to confirm the Plan over CoreStates's objection.

CoreStates appealed the order confirming the Amended Plan to the District Court. See CoreStates, 202 B.R. 33. Among other issues, CoreStates argued that the Bankruptcy Judge improperly rejected its objection by wrongly "[d]etermining that [Huls] was permitted to receive payments . . . before [CoreStates] was paid, in contravention of the Subordination Agreement," thereby violating 11 U.S.C. S 510(a) and the "fair and equitable" requirement of 11 U.S.C. S 1129(b)(1) & (2). In fact, Huls

6

itself filed a brief in opposition to CoreStates's appeal, and CoreStates filed a reply brief responding almost exclusively to Huls's arguments. The District Court refused to consider this argument. It found that CoreStates had not raised the Agreement as a basis for objecting to the Amended Plan in the Bankruptcy Court, and therefore was not entitled to raise it before the District Court. See CoreStates, 202 B.R. at 48. The Court also rejected CoreStates's more general contention that the $600,000 payment unfairly discriminated against it, which Huls discussed at length in its brief. For other reasons, however, the court reversed the confirmation of the Plan. See 202 B.R. at 58.

On August 12, 1996, prior to the ruling of the District Court, UCT paid to Huls the $600,000 sum called for by the Amended Plan.3 On September 6, CoreStates made a written demand on Huls for the money. In that letter, CoreStates asserted that, as a result of the District Court's vacatur of the Amended Plan, there was no confirmed plan and therefore Huls was required to pay the money over to CoreStates per the Agreement. Huls refused.

UCT filed a Second Amended Plan on September 19. The Second Amended Plan altered the Amended Plan only with respect to CoreStates. It restored some of CoreStates's existing liens, which had been eliminated under the Amended Plan. It did not, however, purport to change either CoreStates's rights vis a vis Huls or the payment Huls was to receive. CoreStates objected to the Second Amended Plan as well. It stated a number of grounds for objecting, but did not invoke the Subordination Agreement, except by generalized incorporation. The Bankruptcy Judge again confirmed the Plan over CoreStates's objections. CoreStates did not appeal the confirmation of the Second Amended Plan.

In December 1996, CoreStates filed the present diversity action in the District Court, which had jurisdiction under 28 U.S.C. S 1332. Huls moved to dismiss the complaint for

_____

3. CoreStates had previously requested a stay of the Amended Plan in order to prevent UCT from paying Huls the $600,000. This request was based in part on the Agreement. The Bankruptcy Court denied the request without addressing the Agreement.

failure to state a claim under Fed. R. Civ. P. 12(b)(6), or, in the alternative, for judgment on the pleadings under Fed. R. Civ. P. 12(c). CoreStates responded with a motion for summary judgment. The District Court granted Huls's motion for judgment on the pleadings and denied CoreStates's motion for summary judgment. See CoreStates, 1997 WL 560193, at *4. The court held that the doctrine of claim preclusion barred CoreStates's claim, reasoning that the claims CoreStates raises in the present case could have been raised during the UCT bankruptcy proceeding. See 1997 WL 560193, at *3-*4. CoreStates timely appeals from this decision. We have jurisdiction pursuant to 28 U.S.C. S 1291.

This court exercises plenary review over a district court's order granting a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). See Kruzits v. Okuma Mach. Tool, Inc., 40 F.3d 52, 54 (3d Cir. 1994). Under Rule 12(c), a district court cannot grant judgment on the pleadings, and we may not affirm such a grant, "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." Kruzits, 40 F.3d at 54 (quoting Jablonski v. Pan Am. World Airways, Inc., 863 F.2d 289, 290 (3d Cir. 1988) (quoting Society Hill Civic Assn. v. Harris, 632 F.2d 1045, 1054 (3d Cir. 1980) (citation omitted))).

II. Claim Preclusion and Bankruptcy Proceedings

The central issue in this appeal is the claim preclusive effect of the Bankruptcy Judge's final order of confirmation, over CoreStates's objection, on CoreStates's claim against Huls. In the confirmation proceeding, CoreStates objected to the Plan as unfair in part because it provided for the immediate payment of $600,000 to Huls, a junior creditor. CoreStates's present claim is that the Subordination Agreement requires Huls to pay to CoreStates the $600,000 Huls received pursuant to the now-confirmed Reorganization Plan. A strong argument can be made that CoreStates's unfairness objection so clearly implicated the Agreement that the issue that divides the parties in the present case was effectively raised and litigated in the

8

bankruptcy proceeding, so that we are dealing here with issue preclusion rather than claim preclusion.4 Since the District Court and the parties have treated this case as involving primarily claim preclusion, however, and claim preclusion is the most clearly applicable doctrine, we begin with a review of the basic law of claim preclusion.

In Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra, 983 F.2d 495 (3d Cir. 1992), we explained that claim preclusion (or res judicata as it is also called) "gives dispositive effect to a prior judgment if a particular issue, although not litigated, could have been raised in the earlier proceeding. Claim preclusion requires: (1) afinal judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." Centra, 983 F.2d at 504 (emphasis added; citations omitted). If these three factors are present, a claim that was or could have been raised previously must be dismissed as precluded.

We have elaborated on the third element of the Centra test, both in general and in the context of bankruptcy proceedings. In deciding whether two suits are based on the same "cause of action," we take a broad view, looking to whether there is an "essential similarity of the underlying events giving rise to the various legal claims." United States v. Athlone Indus., 746 F.2d 977, 984 (3d Cir. 1984); see also Restatement (Second) of Judgments S 24 cmt. a ("The present trend is to see claim in factual [as opposed to legal] terms and to make it coterminous with the transaction regardless of the number of substantive theories . .. that may be available to the plaintiff . . . ."); id. cmt. b ("In general, the expression [`transaction'] connotes a natural grouping or common nucleus of operative facts."). Because a "bankruptcy case" is fundamentally different from the typical civil action, however, comparison of a bankruptcy proceeding with another proceeding is not susceptible to

_____

4. Another way of looking at it might be that CoreStates's claim should be barred by reason of S 1141 of the Bankruptcy Code, 11 U.S.C. S 1141(a), which provides that a confirmed plan is binding on all creditors, including feuding creditors such as CoreStates and Huls, who litigated the fairness of the Plan as affected by the disputed payment.

the standard res judicata analysis. "Rather, we scrutinize the totality of the circumstances in each action and then determine whether the primary test of Athlone, i.e., essential similarity in the underlying events, has been satisfied." Oneida Motor Freight, Inc. v. United Jersey Bank, 848 F.2d 414, 419 n.5 (3d Cir. 1988).

The principle of claim preclusion applies to final orders overruling objections to a reorganization plan in bankruptcy proceedings just as it does to any other final judgment on a claim. See Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.), 898 F.2d 1544, 1552 (11th Cir. 1990) ("Because the claims raised in the Wallises' adversary complaint were already raised, or could have been raised, in their objection to confirmation, we hold that the doctrine of claim preclusion bars them from relitigating those claims."); see also Katchen v. Landy, 382 U.S. 323, 334 (1966) ("The normal rules of res judicata and collateral estoppel apply to the decisions of bankruptcy courts."); Donaldson v. Bernstein, 104 F.3d 547, 554 (3d Cir. 1997) ("[A] confirmation order is res judicata as to all issues decided or which could have been decided at the hearing on confirmation." (quoting In re Szostek, 886 F.2d 1405, 1408 (3d Cir. 1989))); Crop-Maker Soil Servs. v. Fairmount St. Bank, 881 F.2d 436, 440 (7th Cir. 1991) ("Public policy supports res judicata generally, but in the bankruptcy context in particular."); cf. 11 U.S.C.S 1141(a) ("[T]he provisions of a confirmed plan bind . . . any creditor . . . whether or not the claim or interest of such creditor . . . is impaired under the plan and whether or not such creditor . . . has accepted the plan."). Accordingly, we ordinarily would simply apply these rules. CoreStates suggests two reasons why we should not.5 We address these in turn.

_____

5. CoreStates also submits that claim preclusion should not apply because the bankruptcy proceeding did not modify or adjudicate its rights under the Agreement. This argument misapprehends the fundamental nature of the doctrine of claim preclusion, which applies whether or not the particular issue was actually raised or decided by the prior court. See Agrilectric Power Partners, Ltd. v. General Elec. Co., 20 F.3d 663 (5th Cir. 1994). The continued effectiveness of the contract is simply irrelevant. Of course, if CoreStates's claim had not accrued before the Bankruptcy Judge confirmed UCT's Plan of Reorganization, then whether the Plan had modified the Agreement would be important.

10

III. Claim Preclusion: Non-Core Claims and Claims
      Between Creditors

CoreStates's submissions raise legitimate questions as to
the extent to which claim preclusion applies to bankruptcy
orders and judgments. The thrust of its contentions is in
the nature of a caveat that, because bankruptcy
jurisdiction is so comprehensive, and a bankruptcy
proceeding potentially can be so broad, its preclusive effect
should be limited. We address two questions CoreStates
poses about the claim preclusive effect of a bankruptcy
judge's orders rejecting objections to reorganization plans:
whether the doctrine should preclude claims that would
have fallen within the non-core "related" -- as opposed to
the core -- bankruptcy jurisdiction, and whether it should
apply to the claims of a creditor who objects to a
bankruptcy reorganization plan. We believe that these
suggested limitations on the application of claim preclusion
are unnecessary, and that claim preclusion should apply
regardless of the jurisdictional basis of the present claim
and between all parties to a bankruptcy case.

A. Claim Preclusion and Non-Core Claims

The first question is whether claim preclusion should
apply if CoreStates's claim falls within the non-core
"related" bankruptcy jurisdiction. The jurisdiction of a court
hearing a Chapter 11 bankruptcy reorganization case is
broad. This jurisdiction is delineated in 28 U.S.C. SS 157 &
1334. Title 28 initially grants jurisdiction over all aspects of
a bankruptcy case to the district courts. See 28 U.S.C.
S 1334.6 Section 157(a) then permits the district courts to

_____

6. Section 1334 provides as follows:

      (a) Except as provided in subsection (b) of this section, the
    district courts shall have original and exclusive jurisdiction of
all
    cases under title 11.

      (b) Notwithstanding any Act of Congress that confers exclusive
    jurisdiction on a court or courts other than the district courts,
the
    district courts shall have original but not exclusive jurisdiction
of all
    civil proceedings arising under title 11, or arising in or related
to
    cases under title 11.

11

automatically refer any proceedings over which they have jurisdiction under S 1334 to the bankruptcy courts.7 See, e.g., Bankruptcy Administration Orders (E.D. Pa. July 25, 1984, Nov. 8, 1990) (using the District Court's full authority to refer cases to bankruptcy judges under S157(a)). Section 157(b)(1) provides that "[b]ankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection [157(a)], and may enter appropriate orders and judgments . . . ."

Along with those listed in the statute,8 "a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." Torkelsen v. Maggio (In re Guild & Gallery Plus, Inc.), 72 F.3d 1171, 1178 (3d Cir. 1996) (quoting In re Marcus Hook Dev. Park, Inc., 943 F.2d 261, 267 (3d Cir. 1991) (citations omitted)). Bankruptcy judges may also hear non-core proceedings that are otherwise related to a bankruptcy case. See S 157(c)(1) ("A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.").

A claim is a non-core "related" claim if its

> outcome . . . could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

_____

7. Section 157(a) provides: "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

8. Section 157(b)(2) presents a nonexclusive list of core proceedings, including "determinations of the validity, extent, or priority of liens." S 157(b)(2)(K).

Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (emphasis and citations omitted). In non-core claims, however, the bankruptcy judge may not enter final orders or judgments, but must submit proposed findings of fact and conclusions of law to the district court for entry of judgment, see 28 U.S.C. S 157(c)(1),9 unless all the parties consent to the bankruptcy judge's entering judgment, see S 157(c)(2).10

This distinction between core and non-core proceedings dates to the Supreme Court case of Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50 (1982). The principles of Northern Pipeline are familiar, and are described in the margin.11 Although CoreStates does not

_____

9. Section 157(c)(1) provides, in pertinent part:

> In [a non-core] proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.

10. Section 157(c)(2) provides:

> Notwithstanding the provisions of paragraph (1) of this subsection,
> the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments . . . .

11. A Chapter 11 debtor brought claims before a bankruptcy judge against a creditor for breach of contract and warranty, misrepresentation, coercion, and duress, under the jurisdictional provisions of the 1978 Bankruptcy Reform Act. Those provisions granted bankruptcy courts jurisdiction over all "civil proceedings arising under title 11, or arising in or related to cases under title 11." 458 U.S. at 54
(quoting 28 U.S.C. S 1471(b) (1976 ed. Supp. IV)) (emphasis and alteration in original). The Court concluded that this grant of jurisdiction
over proceedings merely "related to" bankruptcy cases to non-Article III bankruptcy judges violated the Constitution. This decision rested on the notion that non-Article III judges may only hear cases involving public, congressionally created rights, but not claims based on private common-law rights. See 458 U.S. at 80-84 (citing Crowell v. Benson, 285 U.S. 22, 51-65 (1932)). The protections afforded a debtor under the Bankruptcy Code are congressionally created public rights. The debtor's breach of

argue that section 157 is constitutionally problematic in light of Northern Pipeline, some courts and commentators have questioned whether claim preclusion can apply to non-core claims that could have been raised in a bankruptcy proceeding. More specifically, the Fifth and Seventh Circuits have held that a subsequent claim is not barred by a confirmation order from a bankruptcy proceeding in which the present claim could have been raised only under section 157's non-core "related" jurisdiction. See Barnett v. Stern, 909 F.2d 973, 978-79 (7th Cir. 1990); Howell Hydrocarbons, Inc. v. Adams, 897 F.2d 183, 189 (5th Cir. 1990); see also George A. Martinez, The Res Judicata Effect of Bankruptcy Court Judgments: The Procedural and Constitutional Concerns, 62 Mo. L. Rev. 9 (1997).

Ordinarily, a party will not be precluded from raising a claim by a prior adjudication if the party did not have the opportunity to fully and fairly litigate the claim. See Restatement (Second) of Judgments S 26(1)(c). The courts in Barnett and Howell reasoned that, because a bankruptcy judge could not, under section 157(c)(1), finally adjudicate a non-core claim, a party to such a confirmation proceeding would not have an opportunity to fully and fairly litigate a claim "related to" the bankruptcy case. Accordingly, they concluded that a confirmation order does not have a claim preclusive effect on a claim that would have been brought under non-core "related" jurisdiction and adjudicated within the constraints of section 157(c). See Barnett, 909 F.2d at 979; Howell, 897 F.2d at 189.

_____

contract claim, along with the other claims the debtor brought, however, involved only private common-law rights, and thus could not be adjudicated in a non-Article III court.

In response to the Northern Pipeline decision, Congress enacted the jurisdiction provisions currently set forth in 28 U.S.C. SS 157 & 1334. See Bankruptcy Amendments & Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 344. As seen above, these provisions differ from those at issue in Northern Pipeline primarily in that they limit a bankruptcy judge's ability to issue final orders and judgments in cases brought under the non-core "related" jurisdiction. See 28 U.S.C. S157(c).

We disagree, believing that an order rejecting an objection to a reorganization plan in a bankruptcy proceeding has a claim preclusive effect on a claim that could have been brought in that proceeding by the objector, even if only under the non-core "related" bankruptcy jurisdiction. Our conclusion in this regard is consistent with those of the Second, Sixth and Ninth Circuits. See, e.g., Robertson v. Isomedix, Inc. (In re Intl. Nutronics, Inc.), 28 F.3d 965 (9th Cir. 1994); Sanders Confectionery Prods., Inc. v. Heller Fin., Inc., 973 F.2d 474, 482-83 (6th Cir. 1992); Sure-Snap Corp. v. State St. Bank & Trust Co., 948 F.2d 869, 873 (2d Cir. 1991); see also Ralph E. Avery, Chapter 11 Bankruptcy and Principles of Res Judicata, 102 Com. L.J. 257, 286-88 (1997). These courts have observed that, even though a bankruptcy judge could not conclusively determine a non-core proceeding, the bankruptcy judge and the district court together could do so, and this was sufficient to permit full and fair litigation of the non-core claim. Accordingly, these courts have concluded that a confirmation order could have claim preclusive effect even on non-core "related" claims that could have been raised alongside an objection in the confirmation proceeding. See Robertson, 28 F.3d at 969; Sanders, 973 F.2d at 482.

We thus conclude that the restrictions on a bankruptcy judge's judicial power with respect to non-core "related" claims do not limit the effect of the doctrine of claim preclusion. This depends on our interpretation of section 26 of the Restatement (Second) of Judgments. See Venuto v. Witco Corp., 117 F.3d 754, 758-59 (3d Cir. 1997) (relying on section 26 in analyzing federal law of claim preclusion). Section 26 provides, in pertinent part:

> When any of the following circumstances exists, the [doctrine of claim preclusion] does not apply to extinguish the claim, and part or all of the claim subsists as a possible basis for a second action by the plaintiff against the defendant:
>
> . . . .
>
> The plaintiff was unable to rely on a certain theory of the case or to seek a certain remedy or form of relief in

15

the first action because of the limitations on the subject matter jurisdiction of the courts or restrictions on their authority to entertain multiple theories or demands for multiple remedies or forms of relief in a single action, and the plaintiff desires in the second action to rely on that theory or to seek that remedy or form of relief.

Restatement (Second) of Judgments S 26(1)(c). Claim preclusion should therefore apply only where "the jurisdiction in which the first judgment was rendered was one which put no formal barriers in the way of a litigant's presenting to a court in one action the entire claim, including any theories of recovery or demands for relief that might have been available to him under applicable law." Restatement S 26 cmt. c.

The comments to the Restatement discuss two primary types of cases in which this limitation applies. First, they discuss a case in which the first judgment is in a state court, and the plaintiff then brings a second action in federal court under a statute that gives federal courts exclusive jurisdiction. In such a case, the Supreme Court has held that the later federal action is not barred by claim preclusion. See Marrese v. American Acad. of Orthop. Surgs., 470 U.S. 373 (1985); Restatement S 26 cmt. c, illus. 2. Second, the Restatement explains that a later action is not barred by a prior action when the court hearing the first action had personal jurisdiction over the defendant only as to the theory of the first action, but not for that on which the second action is predicated. See Restatement S 26 cmt. c.

We think the exceptions set forth in section 26(1)(c) of the Restatement are inapplicable to the case at bar. A bankruptcy judge's jurisdiction over a non-core "related" claim is not limited in the sense of that section. Section 26(1)(c) applies to limitations on the types of theories, remedies, or relief available if a claim is brought in a particular forum. But bringing a non-core "related" claim before a bankruptcy judge does not in any way limit the available theories, remedies, or relief. Cf. Celotex Corp. v. Edwards, 514 U.S. 300, 309 n.7 (1995) (rejecting the argument that a bankruptcy judge does not have the power

16

to issue an injunction barring an action in a different district court). A bankruptcy judge is perfectly capable of recommending, and the district court of awarding, judgment based on any theory, remedy, or relief, just as if the claim had been brought originally before a district court, or even a state court of general jurisdiction, outside of a bankruptcy proceeding.

The Fifth and Seventh Circuits' main concern seems to be that since a bankruptcy judge cannot conclusively reward relief in a non-core proceeding, the judge does not have jurisdiction over non-core claims. See Howell, 897 F.2d at 189 ("Moreover, the bankruptcy court would not have had jurisdiction over the [non-core `related'] claims against the defendants."). This concern, however, misses the basic point that, like magistrate judges, bankruptcy judges have no jurisdiction over any cases. In any bankruptcy proceeding, jurisdiction over the case rests with the district court; proceedings are only referred to the bankruptcy judges for consideration. See Sanders, 973 F.2d at 483 ("Although the bankruptcy court would not have subject matter jurisdiction over a non-core related proceeding, the action would still be within the district court's jurisdiction."). In addition, the district courts retain the power to withdraw the reference at any time. See 28 U.S.C. S 157(d).

Likewise, even assuming that the bankruptcy judge has jurisdiction in some sense, the restraints that section 157(c) imposes on the judge's power to dispose of a non-core claim do not bring it within the ambit of section 26(1)(c) of the Restatement. Jurisdiction is different from judicial power.12 A limitation on judicial power is not a

_____

12. See American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.), 885 F.2d 621, 624 (9th Cir. 1989) ("Subject matter jurisdiction and power are separate prerequisites to the court's capacity to act. Subject matter jurisdiction is the court's authority to entertain an action between the parties before it. Power . . . is the scope
and forms of relief the court may order in an action in which it has jurisdiction."); Holly's, Inc. v. City of Kentwood (In re Holly's, Inc.), 172
B.R. 545, 554 n.9 (Bankr. W.D. Mich. 1994), affd., 178 B.R. 711 (W.D. Mich. 1995); Gray v. Hall, 265 P. 246, 251 (Cal. 1928) ("Jurisdiction has

17

limitation on jurisdiction. Section 157(c) only limits a bankruptcy judge's power to grant relief, not jurisdiction over a proceeding requesting such relief. Since section 26(c) of the Restatement speaks only of jurisdiction, it does not limit the preclusive effect of a confirmation of a reorganization plan over objection on a subsequent claim that could have been brought during the confirmation proceeding as a non-core "related" claim. See Restatement S 24 cmt. g (limits on the power of a court to grant a remedy do not affect the claim preclusive effect of its judgments). Accordingly, we agree with the Second, Sixth and Ninth Circuits that a prior confirmation order has claim preclusive effect with respect to a claim that could have been brought as a non core "related" proceeding during the confirmation proceeding.

This is not to say, of course, that claim preclusion will apply to all claims with any factual connection to issues raised in the bankruptcy proceeding. Under section 26 of the Restatement, the claim must fall within the bankruptcy jurisdiction. Accordingly, claim preclusion will only apply if the claim is at least "related to" the bankruptcy case, 28 U.S.C. SS 157 & 1334, i.e., if it "could conceivably have any effect on the estate being administered in bankruptcy," Pacor, 743 F.2d at 994 (emphasis and citations omitted). A party to a bankruptcy would not be precluded from later bringing a claim that could not conceivably have had any effect on the bankruptcy estate.

B. Claim Preclusion Between Creditors

CoreStates contends that claim preclusion cannot apply to claims between creditors in a bankruptcy confirmation proceeding. It relies on the fact that a party in a civil action is not precluded from litigating a claim simply because it had an opportunity to raise the claim as a cross-claim in a

_____

often been said to be `the power to hear and determine.' It is in truth the
power to do both or either -- to hear without determining or to determine without hearing."); see also In re Specialty Equip. Cos., 3 F.3d 1043, 1045 (7th Cir. 1993) (distinguishing between challenges to a court's jurisdiction and challenges to its power).

18

prior suit to which it was a party. See United States v. Berman, 884 F.2d 916, 923 n.9 (6th Cir. 1989); Peterson v. Watt, 666 F.2d 361, 363 (9th Cir. 1982); 6 Charles Alan Wright et al., Federal Practice & ProcedureS 1431, at 236 (2d ed. 1990) ("A party who decides not to bring his claim [as a cross-claim] will not be barred by res judicata . . . from asserting it in a later action, as he would if the claim were a compulsory counterclaim . . . ."); cf. Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., 750 F.2d 267, 270 (3d Cir. 1984) (noting that, under Pennsylvania law, claim preclusion bars the litigation of a claim that actually was raised as a cross-claim in a prior proceeding).

CoreStates is of course correct that, in general, a creditor who does not raise a claim against another party to the bankruptcy proceeding cannot be precluded from later asserting a claim. The question is, whether, for claim preclusion purposes, a creditor's, such as CoreStates's, objection to a reorganization plan can state a claim against another creditor, such as Huls, whose rights under the proposed plan the objection concerns. We conclude that in particular circumstances, such as those present here, it can.

A cause of action is defined by its factual contours. As noted above, two claims involve the same cause of action if there is "an essential similarity of the underlying events giving rise to the various legal claims." Athlone, 746 F.2d at 984; see also Restatement (Second) of Judgments S 24 cmts. a, b. Because a "bankruptcy case" is fundamentally different from the typical civil action, however, comparison of a bankruptcy proceeding with another later proceeding is not susceptible to the standard res judicata analysis. "Rather, we scrutinize the totality of the circumstances in each action and then determine whether the primary test of Athlone, i.e., essential similarity in the underlying events has been satisfied." Oneida, 848 F.2d at 419 n.5.

As noted above, claim preclusion traditionally has not acted as a bar to the later litigation of a claim by a party who has not actively raised a claim based on the same cause of action in a prior proceeding.13  See Peterson, 666

_____

13. The Restatement provides two limited exceptions to this rule, in addition to the case discussed in the text where the defendant interposes

F.2d at 363; cf. Restatement (Second) of Judgments S 22(1) ("Where the defendant may interpose a claim as a counterclaim but he fails to do so, he is not thereby precluded from subsequently maintaining an action on that claim [with certain exceptions]."); id. S 38 cmt. a ("Where no [cross- or counter-] pleadings have been interposed, the possibility of merger and bar by definition does not arise."). Where a party interposes such a claim, however, the party becomes a plaintiff for claim preclusion purposes. See Restatement (Second) of Judgments S 23 cmt. a ("A defendant who interposes a counterclaim is, in substance, a plaintiff, as far as the counterclaim is concerned. . . ."). Accordingly, claim preclusion applies to the claims of a party who asserts any claim in an action, even where the party is not the original plaintiff. See Fowler v. Vineyard, 405 S.E.2d 678 (Ga. 1991); 18 Wright et al., supra, S 4450, at 425 ("Preclusion should apply according to ordinary rules between any parties who tried a claim between themselves.").

A party who raises an objection to a reorganization plan in a confirmation proceeding has interposed a claim in the sense just discussed. Under 11 U.S.C. S 1128(b), "[a] party

_____

a counterclaim. See Restatement (Second) of Judgments S 22(2). First, a defendant cannot bring a claim in a later proceeding if it could have been brought as a compulsory counterclaim in an earlier proceeding to which a compulsory counterclaim statute or rule applied. See S 22(2)(a). This exception will not ordinarily apply to bankruptcy confirmation orders, however, because a confirmation proceeding is a contested matter to which no compulsory counterclaim rule applies. See Fed. R. Bankr. P. 3020(b)(1), 9014. Second, a defendant in a case that proceeds to judgment cannot bring a later claim if "[t]he relationship between the counterclaim and the [later] claim is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." See S 22(2)(b). Under this latter exception, even if a creditor did not proffer an objection to a plan confirmation, it would still be precluded from bringing a later claim based on the same cause of action if a judgment in its favor on the later claim would effectively nullify the effects of the confirmation order. See, e.g., Sure-Snap, 948 F.2d at 874-76. Since we can decide this case without considering these exceptions, we need not and do not decide whether and how they apply to bankruptcy plan confirmation orders.

20

in interest may object to the confirmation of a plan." A claim is a "[m]eans by or through which claimant obtains possession or enjoyment of [a] privilege or thing." Black's Law Dictionary 247 (6th ed. 1990). By asserting an objection, a creditor asserts its privilege of having its interests in the bankruptcy estate settled in a plan that satisfies the requirements of S 1129. Furthermore, an objection requires the bankruptcy judge to adjudicate whether a proposed plan of reorganization meets the requirements of S 1129.

We also observe that, procedurally, an objection to a plan may possess all the hallmarks of a claim. An objection requires the bankruptcy judge to adjudicate whether a plan meets the requirements for confirmation. See 11 U.S.C. S 1129. Such an objection must be filed with the court and served on all parties to the confirmation proceeding. See Fed. R. Bankr. P. 3020(b)(1). The filing of an objection gives rise to a contested matter, see Fed. R. Bankr. P. 3020(b)(1), in which the many of the familiar rules of civil procedure apply, including the rules of discovery, see Fed. R. Bankr. P. 9014. A confirmation order rejecting objections is a final adjudication sufficient to preclude later claims. See Stoll v. Gottlieb, 305 U.S. 165, 170-71 (1938); Szostek, 886 F.2d at 1409-10.

Furthermore, we think that an objection can be a claim against other creditors, as well as the debtor, for claim preclusion purposes. A claimant may be bound under the doctrine of claim preclusion by a judgment on a claim against another party not named as its adversary if they are adversaries in fact. See Sullivan v. Easco Corp., 662 F. Supp. 1396, 1408 (D. Md. 1987); 18 Wright et al., supra, S 4450, at 420; cf. Restatement (Second) of Judgments S 38 ("Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly as adversaries and which are essential to the judgment rendered."). Parties are adversaries if they have "opposing interests, . . . interests for the preservation of which opposition is essential." Black's Law Dictionary, supra, at 53.

21

An objection frequently puts into question the interests of specific non-objecting creditors under a proposed plan. In order to preserve these interests, these non-objecting creditors then have the right to oppose the objections in a hearing.14 We think it beyond cavil that these non-objecting creditors -- whose rights in the estate may be affected by the objection -- are fairly denominated adversaries of the objecting creditor. Accordingly, we think that claim preclusion should bar an objecting creditor such as CoreStates from litigating in a later proceeding claims against a non-objecting creditor in the circumstances present here.

The Eleventh Circuit reached a similar conclusion in Wallis. There, creditors objected to a plan on the grounds that a certain lender had engaged in unfair conduct in obtaining a security interest in the bankruptcy estate, and also that the lender's security interest was really a partnership interest. These objections were rejected. The creditors later brought a separate claim against the lender alleging that the lender engaged in fraud and that the lender was not a secured creditor. The court held that these claims were barred by claim preclusion.

> The Wallises' objection was overruled, and they failed to appeal the order. The Wallises' adversary complaint essentially brings an impermissible collateral attack on the order confirming the plan. Because the claims raised in the Wallises' adversary complaint were already raised, or could have been raised, in their objection to confirmation, we hold that the doctrine of claim preclusion bars them from relitigating those claims.

Wallis, 898 F.2d at 1552 (footnote omitted).

_____

14. For example, one creditor might object to a reorganization plan on the ground that another creditor had become secured as a result of fraud, and therefore its interest should be treated as unsecured. If the bankruptcy judge sustained the objection and refused to confirm the plan, any future proposed plan would presumably be prohibited from treating the second creditor as secured. Accordingly, that creditor would have standing and good reason to oppose the objection.

C. The Limiting Principle that the Two Claims Must Arise
        out of "Same Cause of Action"

Although we have rejected these two extrinsic limitations
on the applicability of claim preclusion, our holding is
actually a narrow one. Although fact-bound, it is also well
within the confines of claim preclusion doctrine. As noted
above, claim preclusion only applies to claims that would
have been within the bankruptcy court jurisdiction, i.e.,
those that are at least "related to" the bankruptcy case. See
supra section III.A. In addition, except possibly in unusual
circumstances, it only applies to creditors who raise a claim
in the bankruptcy proceeding contrary to the interests of
another specific creditor. See supra section III.B. Finally,
the Centra test for claim preclusion provides an additional
limit on the preclusive effect of bankruptcy confirmation
orders over objections. These three intrinsic limitations
provide an appropriate and sufficient limit on the preclusive
effect of the rejection of objections to bankruptcy plans
than the putative restraints we reject above. See supra
sections III.A & B. Since we have already discussed the
jurisdictional limitations on the doctrine and the
requirement that the party to be precluded have previously
raised a claim, we need now discuss only the restraint the
Centra test provides.

Under Centra, a subsequent claim is barred only if it
arises out of "the same cause of action" as that litigated in
the first action. See Centra, 983 F.2d at 504. Where the
first case is a bankruptcy proceeding, we "scrutinize the
totality of the circumstances in each action," Oneida, 848
F.2d at 419 n.5, to ascertain whether there is an "essential
similarity of the underlying events giving rise to the various
legal claims," Athlone Indus., 746 F.2d at 984. We think the
"essential similarity" requirement sufficiently limits the
claim preclusive effect of final orders concerning objections
to bankruptcy reorganization plan confirmations.

We note that some judges and commentators have
expressed concern that claim preclusion has been applied
where the two actions are not sufficiently factually
connected. See Oneida, 848 F.2d at 422 (Stapleton, J.,
dissenting) (arguing that claim preclusion should not apply
because no matter what the judgment in the second case,

23

it could not be inconsistent with the confirmation order); see also Martinez, supra, 62 Mo. L. Rev. at 26-27. But where the evidence required to prove a new claim would have been largely immaterial in a prior confirmation proceeding, we doubt that there will be an "essential similarity of the underlying events" as required to give rise to claim preclusion. See Facchiano Constr. Co. v. United States Dept. of Labor, 987 F.2d 206, 212-13 (3d Cir. 1993) ("whether the material facts alleged are the same" is a key factor in determining whether claim preclusion applies; claim preclusion did not apply where the two claims rested on "different evidence"); Athlone Indus., 746 F.2d at 984 (same).

Similarly, some commentators have complained that claims falling within the non-core, "related" bankruptcy jurisdiction often raise factual issues "totally unrelated" to the confirmation proceeding. See Martinez, supra, 62 Mo. L. Rev. at 26-27. Accordingly, the argument goes, claim preclusion should not apply, because it would be no more efficient to try non-core "related" proceedings in conjunction with a confirmation hearing. Of course, a confirmation proceeding should not bar a subsequent action based on facts totally unrelated to objections raised in the confirmation proceeding. But we think it is wrong to assume as a result that all non-core claims will be factually unrelated to objections raised in the confirmation proceeding in which they could have been brought.

In short, we conclude that where the factual underpinnings of the subsequent claim are not essentially the same as those of the claims raised in the confirmation proceeding, the latter should not have a claim preclusive effect on the former. But, as this case demonstrates, see infra Part IV, not all non-core claims or claims between creditors are factually unrelated to objections adjudicated in confirmation proceedings that assertedly preclude them. Other courts have applied claim preclusion in situations that likewise provide excellent examples of the potential for close factual relationships between claims in bankruptcy proceedings and non-core claims, on the one hand, and claims between creditors, on the other. See, e.g., Robertson, 28 F.3d at 970-71 (applying claim preclusion to non-core

24

claim); Crop-Maker, 881 F.2d at 440 (applying claim preclusion between creditors). Accordingly, we turn to a discussion of the application of the principles set forth above in the admittedly unusual circumstances of the case before us.

IV. Is the Claim Under the Subordination Agreement
        Precluded on the Facts?

Applying the precepts set forth above, we conclude that CoreStates's claim under the Subordination Agreement is precluded.

A. Could CoreStates Have Raised its Present Claim in the
        Bankruptcy Proceeding?

Claim preclusion does not apply unless the present claim was or could have been raised in the prior proceeding. See Centra, 983 F.2d at 504. Accordingly, we must inquire whether CoreStates could have raised its claim before the Bankruptcy Judge. As we have suggested above, CoreStates functionally raised the Subordination Agreement in its objection to the Reorganization Plan. Since it did not formally interpose it, however, and the parties have proceeded as though it did not, we begin with a discussion of whether the legal issue here falls within the scope of a bankruptcy judge's jurisdiction. We then analyze whether, as a factual matter, that issue could have been raised in the bankruptcy proceeding. We conclude that there was no reason CoreStates could not have brought its current claim before the Bankruptcy Judge.15

1. Bankruptcy Jurisdiction

The question before us is whether a creditor's rights as against another creditor under a subordination agreement

_____

15. We note that CoreStates's appellate counsel, when pressed by the panel at oral argument, conceded with the benefit of hindsight, but without abandoning his legal position, that the claim based on the Subordination Agreement probably should have been raised by trial counsel during the bankruptcy proceeding.

25

fall within the bankruptcy jurisdiction. Our circuit precedent suggests that the enforcement of a subordination agreement between creditors may not qualify as a core proceeding. "[A] proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." See Torkelsen, 72 F.3d at 1178. One could reasonably suppose that CoreStates's claim meets this standard because it in effect concerns the extent and priority of Huls's interest in the bankruptcy estate. In fact, the Second Circuit seems to have reached just this conclusion. In Resolution Trust Co. v. Best Products Co. (In re Best Products Co.), 68 F.3d 26 (2d Cir. 1995), which involved a dispute over the enforcement of a contractual subordination agreement between creditors of a Chapter 11 debtor, the court found that while enforcing subordination agreements is "not listed as a core proceeding, the power to prioritize distributions has long been recognized as an essential element of bankruptcy law." Id. at 31. Furthermore, the court reasoned:

> [T]he Subordination Agreement . . . sets forth the relative priority of Best's obligations. Moreover, the fact that Best filed briefs and argued in favor of enforcing the Subordination Agreement in both the district court and this court belies the claim that Best had no interest in the controversy. Determination of the priority rights of various creditors to assets of the Debtor was necessary to administer the estate and was not merely a dispute between two creditors.

Id. at 32.

But an argument could also be made that the core jurisdiction standard is not satisfied here. Even if that is true, however, the claim based on the Subordination Agreement easily satisfies the requirements for the non-core "related to" bankruptcy jurisdiction. See Pacor, 743 F.2d at 994. Pacor only requires that "the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy" in order to invoke non-core "related to" jurisdiction. See Torkelsen, 72 F.3d at 1180-81 (quoting Pacor, 743 F.2d at 994). The court in Pacor further observed that "the proceeding need not

26

necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." 743 F.2d at 994. We have further noted that the "key word in [the Pacor test] is conceivable. Certainty, or even likelihood, is not a requirement. Bankruptcy jurisdiction will exist so long as it is possible that a proceeding may impact on the debtor's rights, liabilities, options, or freedom of action or the handling and administration of the bankruptcy estate." Torkelsen, 72 F.3d at 1181 (quoting Marcus Hook, 943 F.2d at 264) (alteration in original).

Although CoreStates submits that the dispute is entirely between itself and Huls -- and thus does not impact the debtor at all -- we believe it clear that the resolution of this dispute conceivably would have impacted upon the debtor's options in crafting a plan that met with Huls's approval and thereby affected the handling of the bankruptcy estate. If Huls had known that the $600,000 the Reorganization Plan set aside for it was not going to be there "up front," Huls might not have consented to the Plan. Indeed, we cannot overlook that Huls gave up a claim for over $3,000,000 in debt, most of which was secured, in exchange for a cash payment of $600,000. Although junior to CoreStates's, we gather that Huls's largely secured claim had real value and was not simply pie in the sky. Without Huls's consent, UCT might have had a much more difficult time having the Plan confirmed. Likewise, if CoreStates had litigated its rights under the Agreement in the bankruptcy proceeding and lost, it might have fought more strenuously against ultimate confirmation of the Plan, rather than, for example, choosing not to appeal the second confirmation order. We conclude that CoreStates's claim is of the type that falls within the non-core "related," if not the core, jurisdiction of a court sitting in bankruptcy proceedings.

2. Could CoreStates Have Sued Huls While the
        Bankruptcy Confirmation was Still Pending?

Of course, even if an issue is of a type that theoretically could be raised in a bankruptcy case, claim preclusion only

27

applies if the particular claim at issue actually could have been brought in the particular bankruptcy proceeding. On the aspect of this consideration relevant here, if the claim asserted in a later proceeding between co-creditors could not have been raised during the bankruptcy proceeding because the cause of action had not yet accrued, the plaintiff is not precluded from asserting it in the later proceeding. See Labelle Processing Co. v. Swarrow, 72 F.3d 308, 314 (3d Cir. 1995) ("[N]ew facts (i.e. events occurring after the events giving rise to the earlier claim) may give rise to a new claim, which is not precluded by the earlier judgment."); Centra, 983 F.2d at 505. Whether a claim could have been brought in a bankruptcy confirmation proceeding depends on whether the claim is based on pre-confirmation or post-confirmation acts. "Claims for post-confirmation acts are not barred by the res judicata effect of the confirmation order. . . . Creditors whose claims arise from and after confirmation are not barred by the event of confirmation from asserting such claims, except to the extent that they arise from pre-confirmation acts." Donaldson, 104 F.3d at 555 (citations and internal quotations omitted).

The District Court concluded that the present cause of action arose out of pre-confirmation events and could have been raised in the bankruptcy proceeding:

> The first amended plan of reorganization dated March 27, 1996 and known to all interested parties several months before the initial confirmation order, provided for the $600,000 remittance to Huls rather than CoreStates. In addition, UCT actually paid the $600,000 to Huls in August, 1996, before the final amended plan was confirmed by the bankruptcy judge's order of October 1, 1996. CoreStates also put Huls on notice as early as June 12, 1996 that it was obligated to turn over the funds to CoreStates. June 12 was before Huls received the $600,000 and before the final confirmation order. This is simply not a case where CoreStates's claim to the funds in issue was unknown before the bankruptcy proceeding ended.

CoreStates, 1997 WL 560193, at *4 (emphasis added).

28

Our reading of the pleadings confirms the District Court's conclusion. Because (a) UCT gave the $600,000 to Huls; (b) CoreStates was aware of this; and (c) CoreStates had demanded the money, all before the confirmation order was issued, we conclude that CoreStates's cause of action based on the Subordination Agreement had accrued before the confirmation was finalized. The key fact here is that UCT paid the $600,000 to Huls before the confirmation of the Second Amended Plan. CoreStates's cause of action could not accrue until Huls received money from UCT, since Huls could not breach the Agreement until it received money from UCT and then refused to turn it over to CoreStates. If Huls had not received the $600,000 payment until after the Plan was confirmed, CoreStates could not have raised its claim under the Agreement in the bankruptcy proceeding and it would not be precluded from raising it now. In the present case, however, Huls received money from UCT and in fact failed to turn it over to CoreStates in response to CoreStates's demands, all before the final confirmation of the Second Amended Plan. Therefore, we agree with the District Court's conclusion that CoreStates could have raised its present claim in the bankruptcy proceeding.

B. The Centra Factors

Even if CoreStates could have raised its present claim before the Bankruptcy Judge, claim preclusion only applies if the current claim meets the requirements of Centra. "Claim preclusion requires: (1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." Centra, 983 F.2d at 504. CoreStates agrees that the parties in the former and present proceedings are the same, and the law supports this conclusion. See First Union Comm. Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enters., Inc.), 81 F.3d 1310, 1316 n.6 (4th Cir 1996). As noted above and as CoreStates also concedes, it is settled that orders of a bankruptcy judge rejecting objections and confirming a plan of reorganization are final judgments to which the doctrine of claim preclusion applies. See Stoll, 305 U.S. at 170–71; Szostek, 886 F.2d at 1408. This does not entirely

29

settle the matter, however, because a question remains whether CoreStates raised its claim to the $600,000 in the bankruptcy proceeding and whether the claim was one against Huls.

Raising an objection to a reorganization plan can be a claim for claim preclusion purposes. See supra section III.B. Furthermore, we think CoreStates's objection was a claim against Huls. The objection put Huls's rights in the bankruptcy estate into question. The $600,000 payment was all Huls was entitled to receive under the Reorganization Plan. A challenge to that payment amounted to a challenge to Huls's position in the scheme of distribution the Plan envisioned. In addition, Huls clearly felt that it had an interest in the issue worth preserving, since it opposed the objection extensively throughout the bankruptcy proceedings. Furthermore, Huls filed a brief in opposition to CoreStates's appeal in the District Court, and CoreStates filed a reply brief dealing almost solely with Huls's arguments. Accordingly, the Bankruptcy Judge's dismissal of CoreStates's objection and the subsequent confirmation of the Plan constitute a final judgment on CoreStates's claim against Huls. We thus disagree with the dissent that CoreStates did not assert a claim against Huls in the bankruptcy proceeding.

The more significant question, then, is whether CoreStates's present cause of action is essentially the same as that which it raised in its objection to the Plan. We think it is apparent that the objection and CoreStates's present claim addressed the same factual issue: who should receive and retain the $600,000 UCT was prepared to pay. Although, as CoreStates contends, its legal claims concerning this money may rest on somewhat different grounds in the two proceedings, the "same cause of action" requirement relates to the factual circumstances underlying the claims, not their legal basis. See Athlone Indus., 746 F.2d at 984 (looking to the "essential similarity of the underlying events giving rise to the various legal claims"). The event underlying both the objection to the Plan and the current claim was the distribution of the $600,000. The primary evidence of CoreStates's claim to the money in both the bankruptcy proceeding and the present case would be the Agreement itself.

30

Although we ordinarily "scrutinize the totality of the circumstances" in determining whether two claims are based on the same cause of action where the first claim arose in a bankruptcy proceeding, see Oneida, 848 F.2d at 419 n.5, we think the "essential similarity" of CoreStates's past and present claims is facially apparent. We thus need not engage in any searching scrutiny of the totality of the circumstances to conclude that CoreStates's present claim meets the third prong of the Centra test. 16

V. Conclusion

In closing, we reiterate that CoreStates's present claims are precluded because of the coincidence of several unusual circumstances. First, in the bankruptcy proceeding, CoreStates and Huls contested at length the fairness of the Reorganization Plan to the extent it provided for the payment of $600,000 to Huls. CoreStates's present claim concerns who is ultimately entitled to receive this same money. In the absence of extensive litigation of this claim in the confirmation proceeding, CoreStates would not now be prevented from bringing its suit. Second, UCT paid Huls the $600,000, and CoreStates was aware of and objected to this payment, before the bankruptcy confirmation proceeding ended in a final confirmation of the Plan over CoreStates's objection. Thus, CoreStates could have brought its claim as an ancillary to the confirmation proceeding. In what we suspect is the more usual case, where payments are not made pursuant to reorganization plans until they are confirmed finally, an objecting creditor could not be expected to bring its claim alongside the confirmation proceeding. Primarily because of these two particular circumstances, we conclude that CoreStates's claim is barred by the doctrine of claim preclusion. The

_____

16. The dissent contends that the facts CoreStates would need to prove in its present claim differ from those it needed to establish in its objection to UCT's Reorganization Plan. As is clear from the text, we disagree. Furthermore, contra the dissent, we think the precise issue in both cases was whether Huls was entitled to receive and retain the $600,000 payment. Huls had the absolute right to receive the payment only in the most technical sense.

31

order of the District Court granting judgment on the
pleadings in favor of Huls will be affirmed.

32

STAPLETON, Circuit Judge, Dissenting:

I agree with the Court that principles of claim preclusion can properly be applied with respect to claims falling within the non-core jurisdiction, as well as the core jurisdiction, of a Bankruptcy Court. I assume, without deciding, that the Bankruptcy Court would have had non-core jurisdiction over CoreStates' claim against Huls. I further agree that principles of claim preclusion can properly be applied with respect to crossclaims asserted between creditors in a bankruptcy proceeding.

I am constrained to dissent, however, because the Court reaches its conclusion that CoreStates' claim against Huls is barred only by ignoring well-established principles of claim preclusion. While purporting to apply those principles, the Court proceeds to fashion an unprecedented "entire controversy doctrine" for bankruptcy litigation. Because the parameters of this new doctrine are so broad and ill defined, I fear that much mischief will be done by today's decision.

The Court holds that any claim that could have been asserted in a bankruptcy proceeding by anyone objecting to confirmation of a plan of reorganization against anyone who would benefit from confirmation is barred from being asserted in a subsequent proceeding if the facts underlying the objections raised in the confirmation proceeding and the subsequent claim are "essentially similar." This holding ignores the fact that under traditional principles of claim preclusion the scope of preclusion arising from a judgment is determined by the claim underlying the judgment and is limited to the rights asserted between the claimant and the party against whom the claim is asserted.

The Court is, of course, correct that modern principles of claim preclusion view the concept of a "claim" broadly. When "a valid and final judgment rendered in an action extinguishes the plaintiffs' claim pursuant to the rules of merger or bar . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose." Restatement, Judgments 2d, S 24(1).

33

Claim preclusion cannot be applied, however, without reference to the party who asserted the claim underlying the prior judgment. Thus, a judgment for or against a plaintiff in a prior proceeding rarely affects the claims assertable by other parties to that proceeding even though they may arise out of the same transaction. In the absence of a compulsory counterclaim rule or statute, for example, a defendant who fails to assert a counterclaim arising out of the same transaction is normally not barred from pressing his claim in a subsequent proceeding. Id. S 22.1 The only narrow exception to this rule is where the plaintiff in a prior proceeding has secured a favorable judgment on her claim and successful prosecution of a second action would nullify the initial judgment or would impair rights established in the initial action against the defendant. Id. S 22(2).2 Since a judgment in the plaintiff 's favor on a claim

_____

1. Section 22 of Restatement, Judgments 2d, provides:

     (1) Where the defendant may interpose a claim as a counterclaim
     but he fails to do so, he is not thereby precluded from subsequently
     maintaining an action on that claim, except as stated in Subsection
     (2).

     (2) A defendant who may interpose a claim as a counterclaim in an
     action but fails to do so is precluded, after the rendition of judgment
     in that action, from maintaining an action on the claim if:

     (a) The counterclaim is required to be interposed by a compulsory
     counterclaim statute or rule of court, or

     (b) The relationship between the counterclaim and the plaintiff 's
     claim is such that successful prosecution of the second action
     would nullify the initial judgment or would impair rights established
     in the initial action.

2. As noted in the commentary to S 22(2):

     For such an occasion to arise, it is not sufficient that the
     counterclaim grow out of the same transaction or occurrence as the
     plaintiff's claim, nor is it sufficient that the facts constituting a
     defense also form the basis of the counterclaim. The counterclaim
     must be such that its successful prosecution in a subsequent action
     would nullify the judgment, for example, by allowing the defendant
     to enjoin enforcement of the judgment, or to recover on a restitution
     theory the amount paid pursuant to the judgment (see Illustration

9), or by depriving the plaintiff in the first action of property rights vested in him under the first judgment (see Illustration 10). . . .

34

establishes rights only as between the plaintiff and the opponent of the claim, the rationale for this exception has no application when the defendant in the subsequent suit is not the original plaintiff. Thus, not surprisingly, there appears to be no case in which a judgment on a plaintiff's claim has been held to preclude by merger or bar a claim that would have been a crossclaim if asserted in the original action.

While a claim preclusion analysis must thus focus on the claimant and his or her claim, the universe of "potential claimants" is, of course, not limited to the plaintiff in the original action. As the majority notes, if a defendant in the original action asserts a counterclaim or a crossclaim and a final judgment is rendered with respect to that claim, he becomes a claimant for purposes of claim preclusion analysis. Id. S 23. Thus, had CoreStates asserted a claim against Huls in the bankruptcy proceeding, principles of claim preclusion could properly be applied with reference to that claim. See Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., 750 F.2d 267, 270 (3d Cir. 1984). CoreStates asserted no such claim, however.

While I agree that application of principles of claim preclusion in the context of a bankruptcy proceeding requires flexibility and must take into account the nature of the bankruptcy process, those principles cannot fairly be stretched far enough to effect a preclusion of CoreStates' claim here. In order for claim preclusion to preclude, there must be a final judgment in favor of a claimant into which the precluded claim has merged or a final judgment for the defendant that bars another action by the claimant on the same claim. See Restatement, Judgments 2d, SS 18, 19. A confirmation order may be viewed as a judgment in favor of creditors on their claims against the debtor. To the extent claims have been disallowed, it may also be viewed as a judgment in the debtor's favor on the disallowed claims. Moreover, there is an in rem aspect to the judgment entered at the end of a confirmation proceeding. See 28 U.S.C. S 1334(a). Under traditional principles of claim preclusion, however, none of these judgments would extinguish a claim

35

between creditors who have not raised claims against each other in the bankruptcy proceeding.3

In the bankruptcy proceeding, CoreStates asserted no right to relief from Huls. Moreover, it claimed no right to receive from the debtor's estate the $600,000 ultimately received by Huls. It had no such right to assert. Accordingly, the only way one can conclude that CoreStates made a claim against Huls in the bankruptcy proceeding, as the Court does, is to hold that an objection to confirmation of a plan of reorganization constitutes a claim against anyone who has an economic interest in having the plan confirmed. Since virtually all non-objecting creditors will have such an interest, this holding will require that any party considering an objection canvass the entire universe of creditors to determine whether it has a claim against one of them that might conceivably be regarded as arising from the same or similar underlying events.

The burden thus imposed will be greatly exacerbated by the Court's broad vision of what constitutes the same or similar underlying events. CoreStates' objection to confirmation of the plan was not based, directly or indirectly, on its Subordination Agreement with Huls. Rather, to the extent it was related to Huls at all, CoreStates' objection was based on the claim that the plan "discriminate[d] unfairly" among a class of secured creditors in violation of section 1129(b). The claim CoreStates here seeks to assert is a breach of contract claim based on allegations that it entered into a Subordination Agreement with Huls which Huls breached when it declined to pay $600,000 to CoreStates after it received that amount from UCT. The Court fails to satisfactorily explain how CoreStates' two claims can reasonably be deemed the same cause of action for claim preclusion purposes.

_____

3. An in rem judgment, of course, is "conclusive as to interests [in the res] but does not bind anyone with respect to personal liability." Restatement, Judgments 2d, S 30. Here, CoreStates asserts that Huls is personally liable to it in the amount of $600,000. It has not, and could not, contend that it had a right to receive a $600,000 distribution from the assets of the debtor's estate based upon its agreement with Huls.

36

The section 1129(b) claim that CoreStates included in its objection to confirmation of the plan was based on the respective circumstances of the members of the identified class of secured creditors, their treatment under the proposed plan, and the feasibility of alternative plans of distribution. In contrast, the claim that CoreStates here seeks to press is based on the terms of a Subordination Agreement entered long before the bankruptcy and the fact that Huls received $600,000 from UCT because of UCT debt obligations to it. I perceive no "essential similarity of the [legally relevant] underlying events giving rise to" these claims, and, indeed, I can think of no evidence that would be material to both claims. It would not be necessary for CoreStates, in proving its breach of contract claim, to even refer to the bankruptcy proceeding or the plan of reorganization. It would suffice to show only that Huls received monies from UCT on account of UCT's debt obligation to Huls. The Court seeks to gloss over the distinctiveness of these claims by asserting that "the objection and CoreStates' present claim addressed the same factual issue: who should receive and retain the $600,000 VCT was prepared to pay." Slip Op. at 30. The fact of the matter, however, is that the claim asserted in the bankruptcy proceeding had absolutely nothing to do with whether Huls was entitled to retain the $600,000 payment it would receive under the plan and the claim asserted here has absolutely nothing to do with whether Huls was entitled to receive $600,000 in the bankruptcy.

Because an objection to a plan will now be regarded as making a claim against all who would benefit from confirmation and because the concept of a single cause of action will now be an elastic one, it will be extraordinarily difficult for a creditor in the Third Circuit to determine what crossclaims it must or need not assert. Since the penalty for a mistaken choice is forfeiture, it is not difficult to predict the ultimate result of the Court's holding: multitudinous protective filings of claims against non-debtors and the needless complication of bankruptcy confirmation proceedings.

I would reverse the judgment of the District Court.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit