AMERICAN WHITE CROSS, INC.,
Acme/Chaston Puerto Rico, Inc., and
Weaves Manufacturing Corporation,
Debtors.

AWC Liquidation Corp., Plaintiff,

v.

Barbara Orentzel, Jack Orentzel, Richard Orentzel, John Mueller, Lawrence Wallerstein, Daniel Chimes, Kaare Numme, Jr., Alene Bertini, Joel Munchoff, and Frank Squillance, Defendants.

Electra Investment Trust PLC,
and Electra Associates,
Inc., Appellants,

v.

Barbara Orentzel, Jack Orentzel, Richard Orentzel, John Mueller, Lawrence Wallerstein, Daniel Chimes, Kaare Numme, Jr., Alene Bertini, Joel Munchoff, and Frank Squillance, Appellees.

Bankruptcy No. 96–1109(PJW).
Adversary Nos. A–97–144, 00–10.
Civ.A. No. 00–498–RRM.

United States District Court,
D. Delaware.

Nov. 26, 2001.

Joanne B. Wills, Klehr, Harrison, Harvey Branzburg & Ellers, LLP, Wilmington, DE, for Plaintiff AWC Liquidation Corp.

David B. Stratton, David M. Fournier, and Tara L. Lattomus, Pepper Hamilton LLP, Wilmington, DE, for Appellants Electra Investment Trust P.L.C. and Electra Associates, Inc.

William H. Sudell, Jr., Robert J. Dehney, Morris, Nichols, Arsht & Tunnell, Wilmington, DE; Paul J. Curran, Aaron Stiefel, Kaye, Scholer, Fierman, Hays & Handler, LLP, New York City, for Appellees Barbara Orentzel, et al.

## MEMORANDUM OPINION

McKELVIE, District Judge.

This is an appeal from a decision of the Bankruptcy Court in an adversary proceeding between the debtor and a group of creditors. The debtor, American White Cross, Inc. ("AWC"), filed a petition for protection under Chapter 11 of the Bankruptcy Code on July 17, 1996. The creditors are a group of former shareholders of American White Cross Laboratories, Inc. ("AWCL"), a company debtor purchased in 1993. They filed a claim alleging debtor owed them $3,295,000 under a stock purchase agreement. In this proceeding, the debtor had sought a determination that the former shareholders' claim should be disallowed for alleged fraud in the transaction. That dispute was resolved in an arbitration proceeding in favor of the former shareholders. Following that decision, the debtor sought to amend its pleading in this adversary proceeding seeking a determination that, under the stock purchase agreement, the amount due the former shareholders was subordinated to amounts due another creditor, Electra Investment Trust, P.L.C. and Electra Associates, Inc. (collectively "Electra"). In addition, Electra moved to intervene in this action seeking similar relief.

Judge Walsh denied the debtor's motion, finding the issue of the relative rights of the former shareholders and Electra to payments from the debtor had been resolved in the debtor's confirmed plan of reorganization, which Electra had voted in favor of and which put Electra and the former shareholders in the same class and provided each take a proportional share of the assets to be distributed to that class. Following from that decision, Judge Walsh denied Electra's motion to intervene.

Electra has appealed Judge Walsh's February 17, 2000 order denying their motion. This is the decision on the appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

The court draws the following facts from the record of this proceeding in the Bankruptcy Court.

AWCL was a family-owned manufacturer of private-label first aid products. On May 25, 1993, its shareholders (the "former shareholders") sold their interest in AWCL to NPM Healthcare Products, Inc. in exchange for $12,795,000. Of that payment, $9,500,000 was paid at closing and the remaining $3,295,000 was payable in three annual deferred payments. The Stock Purchase Agreement provided that the deferred payments could be adjusted if the financial statements provided by AWCL during due diligence overstated its value. It also provided for an arbitration procedure should the parties dispute the deferred payments.

The Stock Purchase Agreement also contained a clause that subordinated the deferred payments to NPM's "Senior Indebtedness." Senior Indebtedness was defined as all of the obligations of NPM,

whether arising before or after the Stock Purchase Agreement, and all refinancing of those obligations.

Following NPM's acquisition of AWCL, NPM changed its name to AWC. In 1994, AWC advised the former shareholders that it would not make the deferred payments because it believed the former shareholders had committed fraud and misrepresentation in the sale. AWC and the former shareholders began arbitrating their dispute shortly afterward. The arbitration was eventually suspended to pursue a settlement and, when negotiations failed, the former shareholders sought to resume arbitration proceedings. In April 1996, AWC filed suit in New York state court against the former shareholders for fraud and misrepresentation in the AWCL–NPM transaction.

On July 17, 1996, AWC filed its bankruptcy petition and the former shareholders filed claims for the deferred payments. AWC filed this adversary proceeding against the former shareholders on August 11, 1997, alleging the same claims of fraud and misrepresentation brought in New York and seeking to avoid making the deferred payments and recover damages. The New York state court action was removed to the United States District Court for the Southern District of New York and that court transferred the matter to the District of Delaware.

While the former shareholders' claim to the deferred payments remained pending in the adversary proceeding, AWC submitted, and the court approved, its Substantially Consolidated Second Amended Plan of Reorganization (the "Plan") on September 11, 1997. Electra, among other creditors, voted in favor of the Plan. Under the Plan, an entity known as AWC Liquidation remains as the surviving entity with authority to prosecute the claims of the estate. The Plan designates the claims of both Electra and the former shareholders as unsecured Class 7 claims. Class 7 is the last class of unsecured claims and is followed only by several classes of AWC equity holders. Under the Plan, Class 7 claimants receive a pro rata portion of 97% of the new common stock issued by AWC in satisfaction of their allowed claims. The remaining 3% of the new common stock goes to Class 8, which is comprised of prior holders of AWC's common stock.

Because AWC and the former shareholders continued to dispute the deferred payments, the Plan did not set the amount of the claims to be paid to Class 7 claimants. The Disclosure Statement that accompanied the Plan separately discussed each of the Class 7 claims. In the Statement, AWC classified Electra's claim as a claim that it estimated would be allowed. AWC classified the former shareholders' claims as a claim that it continued to dispute. The Disclosure Statement also stated that Electra supported the Plan and agreed to act in furtherance of its confirmation.

In setting forth the treatment of the claims of both Electra and the former shareholders, the Plan did not mention the subordination agreement contained within the Stock Purchase Agreement. It did, however, discuss another subordination agreement between AWC, Electra, and Bank One, another of AWC's major creditors. The Plan modified the Electra–Bank One subordination to release Bank One's subordination rights if AWC met certain conditions in satisfying Bank One's claim.

On October 6, 1997, the former shareholders filed a motion to compel arbitration under the Stock Purchase Agreement and sought a stay of the adversary proceeding pending the results. The parties agreed to stay the litigation and proceeded with the arbitration. On October 14, 1998, an arbitration tribunal determined that

AWC owed the former shareholders $2,856,506 in deferred payments.[1] The former shareholders moved for confirmation of that award on November 12, 1998.

On November 24, 1998, AWC Liquidation sought to file an amended complaint in the adversary proceeding. The amended complaint withdrew claims based on fraud, negligent misrepresentation, and breach of contract. It substituted claims to subordinate the former shareholders' claim to its other unsecured debt pursuant to the contractual subordination provision of § 510(a) of the Bankruptcy Code, the mandatory subordination provision of § 510(b) of the Code, and the equitable subordination provision of § 510(c) of the Code.[2] The contractual subordination was premised on the subordination clause in the 1993 Stock Purchase Agreement. Electra filed a motion seeking to intervene as plaintiff under Federal Rule of Civil Procedure 24(a) and (b), arguing that it has an interest in the contractual subordination claims because it is a holder of AWC's senior indebtedness and thus a third party beneficiary of the Stock Purchase Agreement.

In a memorandum opinion dated February 17, 2000, Judge Walsh of the Bankruptcy Court denied AWC's motion to amend to add a claim for contractual subordination. He found AWC and Electra waived their contractual subordination rights by supporting the court's confirmation of AWC's Plan. He noted that the Plan addressed the subordination of other claims, but failed to provide for the subordination of the deferred payments, and thus principles of claim preclusion foreclosed AWC and Electra from asserting contractual subordination. Because he addressed AWC's contractual subordination claim on the merits, Judge Walsh denied Electra's motion to intervene as futile, without discussing whether Electra could satisfy the requirements of either mandatory or permissive intervention. AWC did not appeal. Electra did.

■ This court reviews the denial of a motion to intervene under two different standards. Rulings on motions to intervene as a matter of right under Federal Rule of Civil Procedure 24(a) are generally reviewed de novo, although the requirement of "timeliness" in presentation of the motion is reviewed for an abuse of discretion. See *Nissei Sangyo Am., Ltd. v. United States,* 31 F.3d 435, 438 (7th Cir. 1994). Rulings on motions for permissive intervention under Rule 24(b) are reviewed for an abuse of discretion. See *Olden v. Hagerstown Cash Register, Inc.,* 619 F.2d 271, 275 (3d Cir.1980) (per curiam).

## II. *DISCUSSION*

■ The issue for the court is whether a pre-petition subordination agreement between the debtor and a creditor survives the approval of a bankruptcy plan that sets an equivalent priority for claims without specifically providing for the contractual subordination. The Bankruptcy Court ruled that AWC and Electra waived the right to enforce the contractual subordination provision by voting to approve AWC's reorganization plan. Although § 510(a) provides that subordination provisions will be enforced in bankruptcy, the court found

---

1. The arbitration also resulted in an award of $376,250 in favor of the former shareholders under a Consulting Agreement entered between some of the former shareholders and AWC. The Consulting Agreement is not subject to the subordination provisions of the Stock Purchase Agreement and therefore not a subject of this appeal.

2. Because only Electra has appealed, the dispositions of AWC's claims for mandatory and equitable subordination are irrelevant to the present issue.

that the legislative history of § 510(a) and bankruptcy practice both support its conclusion that subordinated claims are usually addressed in bankruptcy by creating separate classes of creditors or other treatment. Thus, AWC and Electra's failure to object to the Plan constituted a waiver of their rights under the Stock Purchase Agreement.

■ The Bankruptcy Court's conclusion is consistent with the manner in which the Third Circuit has applied claim preclusion to the confirmation of bankruptcy plans. The confirmation of a bankruptcy plan has been held to have claim preclusive effect since *Stoll v. Gottlieb*, 305 U.S. 165, 170–71, 59 S.Ct. 134, 83 L.Ed. 104 (1938). Claim preclusion in bankruptcy, like claim preclusion generally, requires "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privies; and (3) a subsequent suit based on the same cause of action." *Board of Trustees of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 504 (3d Cir.1992). In *CoreStates Bank, N.A. v. Huls America, Inc.*, 176 F.3d 187 (3d Cir.1999), the Third Circuit applied these three elements of claim preclusion to a contractual subordination dispute between two creditors. The court found that the confirmation of a bankruptcy plan that established the rights of the creditors to receive payments from the debtor was a final judgment on the merits. It then found that a creditor's subsequent suit against another creditor for contractual subordination was the same cause of action between the same parties as the plan confirmation. *Id.* at 206. Similarly, in this case the confirmation of the bankruptcy Plan, placing the claims of both Electra and the former shareholders in the same class, was a final judgment on the merits of those claims. Electra voted in favor of the confirmed Plan and the Plan

was approved with its support. By seeking contractual subordination in the adversary proceeding, Electra is seeking to alter the rights to which it is entitled under the Plan. Thus, Electra seeks to assert the same cause of action addressed in the Plan's confirmation proceeding and is barred from doing so by claim preclusion. *Id.* at 206.

While CoreStates objected to plan confirmation in *CoreStates Bank*, the court noted that claim preclusion applies to all claims that "could have been brought in the particular bankruptcy proceeding." *Id.* at 204. Thus, Electra's failure to object to plan confirmation in this case, although different than the facts of *CoreStates*, is not material to the application of the elements of claim preclusion. Rather, the court's inquiry is whether there is an "essential similarity of the underlying events" between the second cause of action and the first. *Id.* at 202 (citing *United States v. Athlone Indus.*, 746 F.2d 977, 984 (3d Cir.1984)). Here, the confirmed plan, confirmed with Electra's support, treated the claims of Electra and the former shareholders equivalently, and Electra cannot seek to avoid that result by alleging a contractual subordination claim that it had the opportunity to assert prior to plan confirmation.

Thus, because the Bankruptcy Court found no merit in AWC's contention that the former shareholders' claims were contractually subordinated to its other unsecured debt, it correctly denied Electra's motion to intervene as futile. While the Bankruptcy Court did not address whether Electra's claims might have been entitled to mandatory intervention pursuant to Rule 24(a) or permissive intervention under Rule 24(b), each of which have different standards for review of the denial of a motion to intervene, this court need not now resolve which standard is appropriate

560

for Electra's motion. Because Electra's motion to intervene was futile, the Bankruptcy Court correctly denied the intervention.

III. *CONCLUSION*

For the foregoing reasons, the judgment of the Bankruptcy Court denying Electra's motion to intervene as futile is hereby affirmed. The court will enter an order consistent with this memorandum opinion.