In re SUNSET AVIATION, INC., et al., Debtors.

**Alfred T. Giuliano, Chapter 7 Trustee for the Bankruptcy Estates of Sunset Aviation, Inc., et al., Plaintiff,**

v.

**Shorenstein Company LLC, Defendant.**

Bankruptcy No. 09–10778 (PJW).

Adversary No. 11–50965 (PJW).

United States Bankruptcy Court, D. Delaware.

Sept. 7, 2011.

Michael J. Joyce, Cross & Simon, LLC, Wilmington, DE, John A. Pintarelli, Melissa A. Hager, Morrison & Foerster LLP, New York, NY, to Defendant Shorenstein Company LLC.

John T. Carroll, Cozen O'Connor, Wilmington, DE, Joseph L. Steinfeld, Jr., Karen M. Scheibe, Kara E. Casteel, A.S.K. Financial LLP, St. Paul, MN, for Plaintiff Alfred T. Giuliano, Chapter 7 Trustee for the Bankruptcy Estates of Sunset Aviation, Inc., et al.

## MEMORANDUM OPINION

PETER J. WALSH, Bankruptcy Judge.

This opinion is with respect to Shorenstein Company LLC's ("Shorenstein") motion ("the Motion") (Doc. # 5) to dismiss with prejudice the Chapter 7 Trustee's complaint ("the Complaint") (Doc. # 1). The Motion is filed by Shorenstein pursuant to Federal Rule of Civil Procedure 12(b)(6), made applicable to adversary proceedings by Rule 7012(b) of the Federal Rules of Bankruptcy Procedure. The Complaint seeks to avoid and recover transfers pursuant to 11 U.S.C. §§ 547, 548, 549, and 550, and to disallow Shorenstein's claims pursuant to 11 U.S.C. § 502. For the reasons described below, I will grant the Motion.

## Background

On February 25, 2009, Regal Jets, LLC filed a bankruptcy petition under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.* (Complaint, ¶ 5.) The case was converted to Chapter 7, and a trustee was appointed in June 2009. (*Id.*) On March 6, 2009, Sunset Aviation, Inc. filed a petition for Chapter 7. (*Id.* ¶ 6.) On May 1, 2009, JetDirect Aviation, Inc. ("JetDirect") likewise filed a petition under Chapter 7. (*Id.* ¶ 7.) The Trustee filed a Motion for Order Substantively Consolidating Estate of Regal Jets, LLC, Sunset Aviation, Inc., and JetDirect Aviation, Inc., on July 27, 2010. ("the Motion for Consolidation") (Doc. # 78.) All three cases were substantively consolidated by an Order Granting the Trustee's Motion for Order Substantively Consolidating Estates of Regal Jets, LLC, Sunset Aviation, Inc., and JetDirect Aviation, Inc. ("the Order") on August 19, 2010. (Doc. # 89.)

On February 24, 2011, the Chapter 7 Trustee, Alfred T. Giuliano ("the Trustee"), filed the Complaint to avoid and recover transfers made by the Debtors to Shorenstein. (Complaint, ¶ 1.)

Count I of the Complaint seeks to "avoid all the transfers of an interest of the Debtors' property made by the Debtors to Defendant within the Preference Period," pursuant to § 547[1] of the Bankruptcy Code. (*Id.* ¶ 13.) Importantly, the Trustee asserts that "[f]or purposes of calculating the Preference Period, the substantively consolidated Debtors share the earliest bankruptcy petition filing date of February 25, 2009." (*Id.*, at 3 n. 2.) Thus, according to the Trustee, the preference period is the 90 day period between November 27, 2008 and February 25, 2009, the date on which Regal Jets filed its petition. (*Id.* ¶ 12.) Attached to the Complaint is a list purporting to show a transfer of $443,690

---

1.  Under § 547(b),

    the trustee may avoid any transfer of an interest of the debtor in property—
    (1) to or for the benefit of a creditor;
    (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
    (3) made while the debtor was insolvent;
    (4) made—
    (A) on or within 90 days before the date of the filing of the petition; or
    (B) between ninety days and one year before the date of the filing of the petition, if

    such creditor at the time of such transfer was an insider; and
    (5) that enables such creditor to receive more than such creditor would receive if—
    (A) the case were a case under chapter 7 of this title;
    (B) the transfer had not been made; and
    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

    11 U.S.C. § 547(b).

from the Debtors to Shorenstein that cleared on December 2, 2008. (Ex. A.) Although Exhibit A does not identify which of the Debtors made the transfer to Shorenstein, in its Opening Brief in Support of its Motion to Dismiss ("Brief") (Doc. # 6.), Shorenstein alleges—and the Trustee does not dispute—that the transfer was made by JetDirect. (Brief, at 1.)

In Count II, the Trustee pleads that "the Debtors did not receive reasonably equivalent value in exchange for such transfer(s)" listed in Exhibit A and seeks to avoid any such fraudulent transfers under § 548(a)(1)(B).[2] (Complaint, ¶ 23.) Count III seeks to avoid any of the transfers identified in Exhibit A that were made post-petition, pursuant to § 549.[3] (Id. ¶ 26.) Counts IV and V pray for the recovery of any transfers avoided under the above counts pursuant to § 550[4] and the disallowance of Shorenstein's claims as provided in § 502(d) and (j)[5]. (Id. ¶¶ 28, 30, 35–36.)

Shorenstein asserts that the § 547 claim should be dismissed because the proper petition date from which to calculate the preference period is May 1, 2009, the date on which JetDirect (the transferor) filed its petition, rather than the earliest of the Debtors' filing dates. (Brief, at 1.) As to the Order, Shorenstein argues that the Order should not be applied retroactively, and thus does not establish Regal Jets' February 25, 2009 filing date as the filing date for all of the Debtors. (Id. at 1–2.) As a result, Shorenstein claims that the transfer made on December 2, 2008 falls outside of the 90 day preference period, and thus the Trustee has failed to state a claim entitling him to relief under § 547. (Id.)

In asking for the dismissal of Count II, Shorenstein argues that the Trustee has failed to meet the pleading standard set by *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). (Id. at 9–10.) Similarly, Shorenstein asks

2. Section 548(a)(1)(B) provides, in relevant part, that
   [t]he trustee may avoid any transfer ... of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily ... received less than a reasonably equivalent value in exchange for such transfer or obligation; and ... (I) *was insolvent on the date that such transfer was made or such obligation was incurred,* or became insolvent as a result of such transfer or obligation; (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured....
   11 U.S.C. § 548(a)(1)(B).

3. Section 549 permits the trustee to "avoid a transfer of property of the estate (1) that occurs after the commencement of the case;

and (2)(A) that is authorized only under section 303(f) of this title; or (B) that is not authorized under this title or by the court." 11 U.S.C. § 549.

4. Under § 550(a), "to the extent that a transfer is avoided under section ... 547, 548, 549 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred ... from (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made...." 11 U.S.C. § 550(a)(1).

5. Section 502(d) provides that "the court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... of this title or that is a transferee of a transfer avoidable under section ... 547, 548, 549 ... of this title...." 11 U.S.C. § 502(d). Section 502(j) provides that a claim that has been allowed or disallowed can be "reconsidered for cause .... according to the equities of the case." 11 U.S.C. § 502(j).

that Count III be dismissed because the Trustee did not allege any post-petition transfers, since the transfer listed on Exhibit A occurred before any of the petitions were filed. (*Id.* at 11.) Finally, because the claims for recovery of the avoided transfers and disallowance of Shorenstein's claims are remedies derived from the success of the avoidance and disallowance causes of action, Counts IV and V should be dismissed as the Trustee has failed to state such causes of action. (*Id.* at 12.)

The Trustee filed a Memorandum of Law in Opposition to Shorenstein's Motion to Dismiss ("the Opposition") (Doc. # 15.) In his Opposition, the Trustee does not oppose Shorenstein's Motion as to Counts II and III [6], but he disputes Shorenstein's argument that the Order is not *nunc pro tunc*. Rather, the Trustee asserts that substantive consolidation orders are by nature retroactive. While the Third Circuit has not ruled on the appropriate preference period after substantive consolidation, the Trustee urges the Court to consider other jurisdictions that have held that substantive consolidation orders are automatically deemed to have *nunc pro tunc* effect. (Opposition, at 2–3.) The Trustee further claims that any attack on the Substantive Consolidation Order is barred by *res judicata*, and thus Shorenstein cannot now attack its purported retroactive effect. (*Id.* at 22–23.) As to Counts IV and V, the Trustee argues that those counts should not be dismissed as he has stated a claim for relief under § 547. (*Id.* at 21.)

6. The Trustee does, however, ask the Court to dismiss the counts without prejudice, should they in fact be dismissed.

7. The Trustee also pleads the other elements of a preference action under § 547(b) (Complaint, ¶¶ 16–20.), but Shorenstein does not dispute these allegations. The claim would still fail if the transfers were outside the 90 day preference period, and thus the instant matter does not turn on these allegations.

Shorenstein filed a Reply in Further Support of its Motion to Dismiss. ("the Reply") (Doc. # 18.) Restating its argument that the Order did not change the preference period with respect to transfers made by JetDirect, Shorenstein cites District of Delaware case law rejecting the automatic treatment of substantive consolidation orders as *nunc pro tunc*. (Reply, at 5–8.) Shorenstein also states that its requested relief is not barred by *res judicata*, since the issue of whether the Order had retroactive effect was not previously raised. (*Id.* at 13.)

### Standard of Review

In considering a motion to dismiss, I must accept all factual allegations as true, construe the Complaint in the light most favorable to the Trustee, and determine whether, under any reasonable reading of the Complaint, the Trustee may be entitled to some relief. *Rea v. Federated Investors*, 627 F.3d 937, 940 (3d Cir.2010).

### Discussion

### Count I—Avoidance of Preference Period Transfers

In his prayer for relief under § 547, the Trustee alleges that "the Debtors made transfers of an interest of the Debtors' property to Defendant during the Preference Period in an amount not less than $443,690.00 . . . ." (Complaint, ¶ 14.) The primary issue [7] raised here is the Trustee's use of the February 25, 2009 date as the petition date from which to determine the preference period.[8] The

8. The Trustee argues in his Opposition that there is no challenge to the facts alleged in the Complaint. However, I view the Trustee's statement that "for purposes of calculating the preference period, the substantively consolidated Debtors share the earliest bankruptcy petition filing date of February 25, 2009" as a legal conclusion, not a factual statement. This conclusion is the gravamen of the Motion with regard to Count I. Thus, I find that it is

Trustee asserts that because of the Order, the filing date for all of the Debtors is February 25, 2009, the earliest of the Debtors' filing dates. Shorenstein, on the other hand, argues that since it received the transfer from JetDirect, the preference period should instead be calculated from the date of JetDirect's bankruptcy filing, May 1, 2009. Using JetDirect's petition date, the December 2, 2008 transfer would be well outside of the preference period; thus, the transfer could not be avoided pursuant to § 547 and Count I will be dismissed.

Stated more broadly, the issue here is whether an order for substantive consolidation is retroactively effective when it does not expressly provide that it is *nunc pro tunc.* Shorenstein argues that neither the language of the Order nor the nature of substantive consolidation in general justifies retroactively applying such an order to shift the petition dates. Citing a lack of expressly retroactive language in both the Order and the Trustee's Motion for Consolidation, Shorenstein contends that the Order cannot be deemed *nunc pro tunc.* (Brief, at 5–6.) Further, Shorenstein cites case law from the District of Delaware refusing to automatically apply *nunc pro tunc* effect to a substantive consolidation order. (*Id.* at 6–7) (citing *In re Garden Ridge Corp.,* 338 B.R. 627 (Bankr.D.Del. 2006), *aff'd sub nom Ferguson v. Garden Ridge Corp. (In re Garden Ridge Corp.),* 399 B.R. 135 (D.Del.2008); *Walton v. Post–Confirmation Comm. of Unsecured Creditors (In re GC Cos.),* 298 B.R. 226 (D.Del.2003).)

The Trustee, on the other hand, insists that the Order is, by its nature, retroactively effective and thus rendered February 25, 2009 the petition date for all Debtors. In support of this assertion, the Trustee cites Sixth Circuit cases holding that substantive consolidation establishes

appropriate to address this issue in a motion

the earliest petition date as the operative date for calculation of the preference period; as the Third Circuit has yet to rule on this issue, the Trustee urges this Court to adopt the Sixth Circuit approach. (Opposition, at 8–9) (citing *First Nat'l Bank of Barnesville v. Rafoth (In re Baker & Getty Fin. Serv., Inc.),* 974 F.2d 712 (6th Cir. 1992); *Evans Temple Church of God in Christ and Comm. Ctr., Inc. v. The Carnegie Body Co. (In re Evans Temple Church of Christ and Comm. Ctr., Inc.),* 55 B.R. 976 (Bankr.N.D.Ohio 1986).)

I decline the Trustee's invitation. As Shorenstein notes, the District of Delaware has already addressed the retroactive application of substantive consolidation orders in the *Garden Ridge* and *GC Cos.* cases. Those cases held that a substantive consolidation order is not automatically retroactive. Further, I find the cases cited by the Trustee to be factually distinguishable from the instant matter and thus inapplicable here. In my view, the critical fact in this case is that neither the Trustee's Motion for Consolidation nor the Order itself contain any language to suggest a *nunc pro tunc* application. *Garden Ridge* makes it clear that the language of the order—that is, whether it is expressly *nunc pro tunc*—is controlling; where there is no language suggesting that the order should be applied retroactively, the order will not be given that effect.

*In re Garden Ridge* involved a creditor's claim that substantive consolidation permitted him to off set the debt owed to him by one debtor entity against the debt he owed to another debtor entity. The creditor, Ferguson, had an employment contract with Garden Ridge Management ("GRM"), an affiliate of Garden Ridge Corporation, that entitled him to severance pay in the event that his employment was

to dismiss.

terminated. *Garden Ridge,* 338 B.R. at 631. Ferguson had also executed a promissory note in favor of Garden Ridge, L.P. ("GRLP"), another affiliate of Garden Ridge Corporation. *Id.* Ferguson was eventually terminated from his position at GRM, and soon after, GRM, GRLP, and Garden Ridge Corporation's other affiliates filed for bankruptcy under Chapter 11. *Id.* Ferguson then filed a motion for relief from the automatic stay in order to set off the $250,000 he owed GRLP under the promissory note against his claim for $310,000 in severance pay from GRM. *Id.* As the right of setoff requires mutuality between the debtor and the creditor under the applicable state law, Ferguson argued that the substantive consolidation of all of the Garden Ridge Corporation affiliates into a single entity, as provided in the plan of reorganization, retroactively created the necessary mutuality. *Id.* at 634.

In considering Ferguson's argument, this Court looked at the express language of the plan to determine whether the consolidation was meant to have retroactive effect. The plan provided, in relevant part, that "[o]n the Confirmation Date, the Chapter 11 Cases of all of the Debtors shall be substantively consolidated for all purposes related to the Plan, including, without limitation, for purposes of voting, confirmation, and distributions...." *Garden Ridge,* 338 B.R. at 641. The Court concluded that "[t]here is no language in the Plan which would suggest that substantive consolidation should be given retroactive effect." *Id.* Thus, "as stated in the Plan, substantive consolidation was for certain **prospective** purposes related to the Plan," and there was no mutuality giving rise to a right of setoff. *Id.* (emphasis added.)

Likewise, I find in the instant case that there is no language in either the Order or the Trustee's Motion for Consolidation that could be read to suggest a *nunc pro*

*tunc* application. The Trustee attempts to distinguish *Garden Ridge* in his Opposition by arguing that the Order in this case "is silent as to its effective date." (Opposition, at 16.) I disagree that it is silent. In fact, the Order contains language which is contrary to a *nunc pro tunc* order. Specifically, the Order states: "Further ORDERED that **from the date of this Order forward,** all filings in any of these cases shall be made on the docket of Case No. 09–10778." (Order, para. 5) (emphasis added.) It is clear that the Order was meant to be applied prospectively, rather than retrospectively. The Trustee's Motion for Consolidation is similarly devoid of retroactive language. Neither the Motion for Consolidation itself nor the proposed order attached to the Motion provide that the order be issued *nunc pro tunc.* On the contrary, the Trustee's Motion for Consolidation repeatedly emphasizes that substantive consolidation is needed for ease of administration of the estates, since attempting to separate the Debtors' affairs would be "complex and costly." (Motion for Consolidation, ¶ 17.) This does not warrant the retroactive application of the Order, but instead favors its prospective application. As a consequence of the Trustee's Motion for Consolidation, the Order states:

> Further ORDERED that the findings with respect to the substantive consolidation, consolidation for procedural purposes and joint administration of the Debtors herein are made solely with respect to the Debtors for the purposes of facilitating the orderly liquidation of the Debtors in these proceedings.

(Order, para. 4.)

As a general principle, orders are not deemed to have retroactive effect unless they expressly provide for it. In its discussion of a bankruptcy court's powers to issue orders *nunc pro tunc,* Collier on

Bankruptcy states: "In many cases, a court will change the effective date of one of its orders from the traditional date of entry to some other date." 2 COLLIER *Bankruptcy Code §§ 101–308,* ¶ 105.02[6][a] (16th ed.2011). Absent language to the contrary, an order becomes effective on the date it is entered.

▓▓▓ As I noted in a previous decision, "nunc pro tunc relief is a form of extraordinary relief." *In re Valley Media, Inc.,* 2003 WL 21956410, at *3 (Bankr.D.Del. Aug. 14, 2003). Collier provides that "[s]uch *nunc pro tunc* orders are permissible so long as they are 'necessary or appropriate to carry out the provisions of . . . title [11].' " COLLIER, ¶ 105.02[6][a] (citations omitted.) I do not think it appropriate to use a *nunc pro tunc* order to rewrite § 547, which is what the Trustee is seeking to do here by extending the preference period beyond 90 days. While the Bankruptcy Court has the equitable power under § 105 to issue orders *nunc pro tunc,* "[s]ection 105 must in all cases be carefully construed so as to implement and fit the specific provisions of the Bankruptcy Code." *In re Hoffman Bros. Packing Co., Inc.,* 173 B.R. 177, 186 (9th Cir. BAP 1994).

With regard to the Sixth Circuit cases cited by the Trustee, first I note that the District of Delaware in *In re GC Cos.,* 298 B.R. 226 (D.Del.2003.), expressly refused to accept the Sixth Circuit's automatic application of retroactive status to substantive consolidation. *GC Cos.,* 298 B.R. at 232 ("Absent guidance from the Third Circuit, the Court declines to adopt the approaches of the Sixth and Ninth Circuits.") Moreover, I find that both *In re Baker & Getty* and *In re Evans Temple Church* are distinguishable from the case before me.

The Trustee cites *Baker & Getty* for the proposition that "the earliest filing date is controlling" where two or more cases have been substantively consolidated. (Opposi-

tion, at 11) (citing *Baker & Getty,* 974 F.2d at 721.) In that case, the Circuit Court affirmed the Bankruptcy Court and the District Court's ruling that the estates of a brokerage firm and its affiliate could be substantively consolidated, and that for the purposes of § 547, the first-filed petition would be used for calculating the preference period. There are two central facts that, in my view, distinguish this Sixth Circuit case from the case before me. First, in *Baker & Getty,* the creditor bank in *Baker & Getty* had extended a loan to the individual affiliate but received transfers from the entity which had filed first. *Baker & Getty,* 974 F.2d at 715. Here, Shorenstein is a creditor only of JetDirect and received the transfer from JetDirect. Second, the Sixth Circuit found that "evidence exists that the Bank did treat the debtors as one entity. . . ." *Id.* at 720. In the matter before me, in contrast, there is no evidence that Shorenstein, or any particular creditor, treated Regal Jets and JetDirect as one entity. While the Trustee alleged in his Motion for Consolidation that the Debtors' creditors were led to "believe that they were dealing with what was effectively one single entity" because of the Debtors' lack of internal controls, he has not alleged specific facts with regard to any particular creditor that support this assertion. (Motion for Consolidation, ¶ 20.)

Similarly, in *Evans Temple Church,* there was evidence that the creditor in that case treated the debtors as one entity. *Evans,* 55 B.R. at 983. *Evans* involved the substantive consolidation of the cases of a reverend and his church. *Id.* at 978–79. Reverend Evans and his church had engaged Carnegie, an auto body shop, to perform repairs on a truck titled to the church; the work was secured by a mechanic's lien on the truck. *Id.* at 978. In partial payment for its services, Carnegie received a check—payable to Evans, the

church, and Carnegie—from an insurance company. *Id.* Shortly thereafter, Evans as an individual filed a Chapter 11 petition, and later amended the petition to name both himself and the church as debtors. *Id.* Carnegie was listed as a creditor on Evans's original individual petition. *Id.* The petition was amended a third time to name only the church as the debtor, and a new, separate petition was filed naming Evans, as an individual, as debtor. *Id.* at 979. Both Evans's individual case and the church's case were consolidated. *Id.* After consolidation, the Debtor filed a preference avoidance action against Carnegie, seeking to use Evans's first original filing date as the petition date for calculating the preference period. *Id.* at 980.

In holding that the first original filing date was the controlling date, the Bankruptcy Court pointed to the fact that Carnegie had treated Evans and the church as one entity. *Id.* at 983. Carnegie was listed as a creditor in the schedules to Evans's original petition, and did not object to its inclusion as such. *Id.* Additionally, in its pleadings, Carnegie had referred to actions done by the Debtors as "undertaken by 'Reverend Willie Evans, II, and/or Evans Temple Church of God in Christ and Community Center, Inc.'" *Id.* Both of these facts strongly suggest that Carnegie did not distinguish between Evans as an individual and the church. In contrast, in the case before me, Shorenstein was listed as a creditor only of JetDirect, and it has not conflated JetDirect and Regal Jets in its filings before this Court. As noted above, the Trustee has failed to provide any evidence that Shorenstein treated JetDirect and Regal Jets as a single entity.

The Trustee also attempts to use the doctrine of *res judicata* as a defense against Shorenstein's arguments. *Res judicata* acts to bar later litigation of an issue that was or could have been raised in an earlier proceeding. *CoreStates Bank, N.A. v. Huls America, Inc.,* 176 F.3d 187, 194 (3d Cir.1999) The doctrine requires "(1) a final judgment on the merits in a prior suit involving; (2) the same parties or their privities; and (3) a subsequent suit based on the same cause of action." *Id.* (quoting *Board of Trustees of Trucking Employees Welfare Fund, Inc. v. Centra,* 983 F.2d 495 (3d Cir.1992) (citations and internal quotations omitted).) I find that the doctrine is inapplicable here, as the parties are arguing over what the Order itself says. Furthermore, as the Trustee did not request retroactive effect in his Motion for Consolidation, creditors were not put on notice that a retroactive application was even being contemplated. From this District's precedents in *Garden Ridge* and *GC Cos.,* the creditors could not have been expected to know that substantive consolidation would be applied retroactively, and there is no language in the Trustee's Motion for Consolidation that would have alerted them that he was requesting such a remedy. To this end, I find that *res judicata* does not apply to bar Shorenstein's motion.

In light of the above, I hold that May 1, 2009, the date on which JetDirect filed its bankruptcy petition, is the date which should be used to calculate the preference period. As a result, the December 2, 2008 transfer from JetDirect to Shorenstein falls outside of the 90 day preference period. Thus, even taking all alleged facts as true and construing the Complaint in the light most favorable to the Trustee, I will dismiss Count I, as the Trustee has failed to plead an essential element of a § 547 avoidance action.

As a last point on this issue, I note that the Trustee urges that "there is no procedural bar to Plaintiff now requesting *nunc pro tunc* application of the Order because Defendant has notice and an op-

portunity to be heard on this issue in the instant Adversary Proceeding." (Opposition, at 17–18.) I do not agree with this statement. It is my understanding that there are numerous pending motions to dismiss similar avoidance action complaints brought by the Trustee where the defendants in those actions are similarly situated with Shorenstein, i.e., defendants in avoidance actions arising out of a transfer by JetDirect. This adversary proceeding is not the proper proceeding to reconsider the Order.

## Count II—Avoidance of Fraudulent Conveyances

■■■ Count II does not satisfy the pleading requirements dictated by *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Under *Bell Atlantic,* the Federal Rules of Civil Procedure require

> only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests" .... [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, ... a plaintiff's obligation to provide the "ground" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of

the elements of a cause of action will not do....

550 U.S. at 555, 127 S.Ct. 1955 (citations omitted.) More specifically, *Bell Atlantic* requires a plaintiff to plead at least some facts: "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* at 556 n. 3, 127 S.Ct. 1955.

In the context of an avoidance action under the Bankruptcy Code, the Bankruptcy Court for the District of Delaware has held that a claim for the avoidance of a transfer under § 548 is insufficient when it "simply alleges the statutory elements of a constructive fraud action under section 548(a)(1)(B)." *In re Global Link Telecom Corp.,* 327 B.R. 711, 718 (Bankr.D.Del. 2005.) In that case, the only facts presented by the plaintiff were lists of transfers, without comment on the debtor's financial situation at the time of the transfers or what value was received in exchange for the transfers to the defendant. *Id.*

Count II of the Complaint here falls victim to the same pitfalls described in *Bell Atlantic* and *Global Link,* as it does not plead any actual facts, only legal conclusions. The Trustee simply provides a near verbatim recitation of the elements of § 548 [9] without stating any underlying

---

9. Count II reads:

Subject to proof, Plaintiff pleads in the alternative that to the extent one or more of the Preference Period Transfers and/or Post–Petition Transfers were not on account of an antecedent debt or a prepayment for goods and/or services subsequently received, the Debtors did not receive reasonably equivalent value in exchange for such transfer(s) (the "Potentially Fraudulent Transfers"); and

A. The Debtors were insolvent on the date that the Preference Period Transfers(s) [sic] and/or Post–Petition Transfer(s) were made or became insolvent as

a result of the Preference Period Transfer(s) and/or Post–Petition Transfer(s); or
B. The Debtors were engaged in business or a transaction, or were about to engage in business or a transaction, for which any property remaining with the Debtors who made or fore whose benefit the Preference Period Transfer(s) and/or Post–Petition Transfers were made was an unreasonably small capital; or
C. The Debtors intended to incur, or believed that the Debtors would incur, debts that would be beyond the Debtors' ability to pay as such debts matured.

facts to support these conclusions. The Trustee does not present any evidence on JetDirect's financial position at the time of the transfer or about any value Shorenstein did or did not give JetDirect in exchange for the transfer. Thus, the pleading is insufficient, and I will dismiss Count II for failure to state a claim for relief under § 548.

I note that the Trustee does not refute Shorenstein's Motion on these points; he asks me only to dismiss the count without prejudice so that the Complaint may be amended "should facts come to light indicating that the Transfer was fraudulent...." (Memorandum, at 21.) In the *Global Link* case, the Court cited Federal Rule of Civil Procedure 15(a), which provides that "leave to amend shall be freely given when justice so requires" and allowed the complaint to be amended. *Global Link*, 327 B.R. at 718. *See also In re Brown Schools*, 368 B.R. 394, 404 (Bankr. D.Del.2007) (permitting the trustee to amend its petition where the complaint failed to state a claim for constructively fraudulent transfers); *In re Valley Media, Inc.*, 288 B.R. 189, 192–93 (Bankr.D.Del. 2003) (stating that the court should grant leave to amend in the absence of undue delay, bad faith, a dilatory motive, prejudice, or futility.) In light of the Trustee's request and the prevailing law, I will dismiss Count II without prejudice, as I find none of the disqualifying factors are present here.

**Count III—Recovery of Post–Petition Transfers**

With respect to Count III, the Trustee pleads that

to the extent any of the transfer(s) made by the Debtors to Defendant as identified in Exhibit A ... were transfer(s) of an interest of the Debtors' property that cleared the Debtors' bank account(s) after the Petition Date ..., said transfers were never authorized by the Court or

under the Bankruptcy Code and, thus in accordance with the foregoing, the Post–Petition Transfers are avoidable pursuant to 11 U.S.C. § 549.

(Complaint, ¶ 26.) The transfer listed on Exhibit A is the same December 2, 2008 transfer that the Trustee seeks to avoid pursuant to § 547. Since the earliest of the Debtors' petition dates is February 25, 2009, the transfer was clearly not postpetition. Thus, the Trustee has failed to state a claim for relief under § 549.

As Trustee also requests that I dismiss this Count without prejudice so that he may amend at a later date, I will dismiss Count III without prejudice for the same reason I discussed with regard to Count II.

**Count IV—Recovery of Avoided Transfers**

Count IV seeks the recovery of the transfers avoided under Counts I, II, and III, pursuant to § 550. Section 550 provides that the Trustee may recover property transferred "to the extent that a transfer is avoided" in, *inter alia*, a preference, fraudulent conveyance, or post-petition transfer action. 11 U.S.C. § 550. *See also In re Brown Schools*, 368 B.R. at 406. Here, this Count is mooted by reason of the dismissal of Counts I, II, and II; as I will dismiss Counts I, II, and III for failure to state a cause of action, there will be no avoidance of the transfer and thus nothing to recover. Count IV will be dismissed.

**Count V—Disallowance of Claims**

Count V, which seeks the disallowance of Shorenstein's claims, is also mooted by the dismissal of Counts I, II, and III. Section 502(d) provides that "the court shall disallow any claim of any entity from which property is recoverable under section ... 550 ... of this title or that is a transferee of a transfer avoidable under

section ... 547, 548, 549 ... of this title." 11 U.S.C. § 502(d). Section 502(j) permits the court to reconsider allowed or disallowed claims for cause; case law in this district provides that "the Bankruptcy Court's discretion in deciding whether to reconsider a claim is virtually plenary...." *In re Genesis Health Ventures, Inc.*, 362 B.R. 657, 661 (D.Del.2007.)

In the matter before me, there is no avoidable transfer under §§ 547, 548, or 549, as the Trustee has failed to properly state those claims. The Trustee is not able to recover any property from Shorenstein under § 550, as I will dismiss his claims for avoidance. In light of this, I find no need to reconsider Shorenstein's allowed claims. Therefore, Count V will be dismissed as well.

### Conclusion

For the reasons stated above, I will grant the Motion as to Counts I through V of the Complaint. Counts II and III will be dismissed without prejudice.

### ORDER

For the reasons set forth in the Court's memorandum opinion of this date, Shorenstein Company LLC's motion (Doc. # 5) to dismiss with prejudice the Chapter 7 Trustee's complaint is **granted** as to Counts I through V of the Complaint, with Counts II and III being **dismissed** without prejudice.